THE STATE v. HYLAND, *Appellant.*

Division Two, May 31, 1898.

1. **Assault:** SELF-DEFENSE. An instruction on self-defense should not be given where there is no self-defense in the case.

2. **Murder:** WEAPON USED: FIST. In this case defendant, after having in a friendly manner spoken to deceased, and after he had replied in the same friendly way, wantonly struck him with his fist, which felled him violently to the granitoid walk, from which blow and fall his skull was fractured, causing death. *Held,* that the mode of killing is not material unless it is so essentially different from that alleged in the indictment as to be a fatal variance, *and* that in this case the killing of deceased by the blow and the fall, under the circumstances, was as much murder as if the defendant had shot him with a loaded pistol.

State v. Hyland.

3. ———: INSTRUCTIONS. The circumstances of this case showing a mind fatally bent on mischief, and an unprovoked assault on deceased with whom defendant had just exchanged words of friendly greeting, from which assault he fell to the pavement, his skull being thereby fractured, which resulted in his death, it is *held* that the court committed no error in refusing defendant's instructions which submitted to the jury the question of, *first,* self-defense; *second,* that the blow was given in a heat of passion; *third,* that it was an involuntary and unintentional act, and, *fourth,* that the killing was voluntary manslaughter as the result of a sudden passion caused by a lawful provocation, since there was no evidence in the case upon which to base them.

4. ———: REMARKS OF PROSECUTING ATTORNEY. The prosecuting attorney, in his argument to the jury, said: "Crimes of this character are becoming too frequent." *Held,* not to be error, but a lamentably true statement.

5. ———: ———. Defendant's attorney told the jury that his client was "a law-abiding man with nothing against his character." To this the prosecuting attorney replied that defendant's character was not an issue in the case; that the State could not have made it an issue, and added: "If he had made that an issue in this case and opened the doors, the testimony would have been before the jury. Isn't it a little singular that, after living here twelve or fifteen years he couldn't produce a witness to show that he wasn't that kind of a man." *Held,* legitimate argument in reply to the assertion that defendant was a law-abiding man, and in meeting defendant's attempt to give himself a character not deducible from the evidence.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

AFFIRMED.

*Isaac B. Kimbrell* for appellant.

(1) There is no testimony to support instruction number 4, given by the court, and it did not properly define murder in the second degree. *State v. Wieners,* 66 Mo. 20; *State v. Curtis,* 70 Mo. 594; *Fitch v. State,* 36 S. W. Rep. (Tex.) 584. (2) Instruction number 6 is erroneous. Using the words "did by a blow of his fist kill David Fitzgerald involuntarily" was commenting

upon the evidence, and furthermore it was confusing and misleading. *State v. Wieners*, 66 Mo. 20. (3) Defendant's refused instruction to the effect that if appellant killed deceased in heat of passion by a blow of his fist upon sudden combat without any undue advantage being taken and without any dangerous weapon being used, etc., should have been given. Our legislature has so declared the law. R. S. 1889, sec. 3463; *People v. Bushton*, 80 Cal. 160. (4) The instruction on self-defense should have been given here. *Prickett v. State*, 22 Ala. 39; Wharton's Crim. Law [10 Ed], sec. 628; Kelley's Crim. Law [2 Ed.], sec. 502; 78 Ky. 183; 39 Am. Rep. 213. (5) It was error to permit the prosecuting attorney without rebuke to state to the jury that if defendant had offered evidence of his good character the State could have shown that his character was bad, and that it was strange that here, where he had lived for years, he could not get any one to testify to his good character. Wharton's Crim. Ev. [8 Ed.], sec. 64; *State v. Creson*, 38 Mo. 372. (6) The verdict was against the evidence in this case. There was no evidence of malice. R. S. 1889, sec. 3477; *State v. Nueslin*, 25 Mo. 122; *State v. Vollmer*, 40 N. W. Rep. Neb. 420; *State v. Alexander*, 30 S. C. 74; *State v. Wieners*, 66 Mo. 21; Wharton's Crim. Law [10 Ed.], secs. 324 and 457.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The mode of killing is not material. It is only material that it be shown that the deceased died of the injury inflicted, as its natural, usual and probable consequence. 2 Bishop's Crim. Law, sec. 635; 3 Greenl. on Ev. [15 Ed.], sec. 140; *Cox v. People*, 80 N. Y. 500; *Rex v. Kelley*, 1 Moody C. C. 113; *Rex v.*

*Thompson*, 1 Moody C. C. 139; R. S. 1889, secs. 3459, 3460. (2) If an assault be committed with intent to inflict serious bodily injury, from which death might easily ensue, and death does ensue, the offense will be murder. *Harrell v. State*, 13 Tex. App. 374; *White v. State*, 13 Tex. App. 259; *Adams v. People*, 109 Ill. 444; 1 McClain's Crim. Law, sec. 325; Whart. Crim. Law [9 Ed.], sec. 315. (3) The instructions given by the State are approved instructions and cover every phase of the case. *State v. Stephens*, 96 Mo. 637. (4) And there was no error in refusing to instruct on the law of self-defense. The record absolutely discloses no facts under which such an instruction could be predicated. Neither was there error in refusing to instruct upon the theories of excusable and justifiable homicide. The evidence discloses no such case. R. S. 1889, secs. 3462, 3463; 9 Am. and Eng. Ency. of Law, 537, 538 and 539. (5) There was no error in the remarks of the prosecuting attorney. They show that they were called for by some remarks previously made by counsel for defendant. *Com. v. Weber*, 167 Pa. St. 153; *State v. McCann*, 16 Wash. 249; *State v. Taylor*, 134 Mo. 109; *State v. Conley*, 106 Mich. 429.

GANTT, P. J.—The appellant was tried and convicted at the September term, 1897, of the Jackson county criminal court of murder in the second degree and from that sentence appeals to this court. The indictment is as follows:

"The grand jurors for the State of Missouri in and for the county of Jackson, upon their oath present that Thomas Hyland, whose Christian name in full is unknown to these jurors, late of the county aforesaid, on the 3rd day of May, 1897, at the county of

Jackson, State of Missouri, then and there being, in and upon one David Fitzgerald, then and there being, feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did make an assault, and that the said Thomas Hyland then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, with his fist in and upon the body, jaw and head of him, the said David Fitzgerald, did strike, knock, hit and beat, and did then and there feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, knock, push, cast and throw him, the said David Fitzgerald, with great force and violence, down, in and upon the asphalt pavement, brick sidewalk and stone curbing, then and there being, and the said Thomas Hyland, thus and thereby, then and there, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, as well as by striking, knocking, hitting and beating him, the said David Fitzgerald, in and upon the body, jaw and head, as by the said knocking, pushing, casting and throwing of him the said David Fitzgerald, down, in and upon the said asphalt pavement, brick sidewalk and stone curbing, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, giving to him, the said David Fitzgerald, then and there and thereby, in and upon the head of him, the said Fitzgerald, one mortal blow, bruise, contusion, stroke, fracture of the skull and wound, the said David Fitzgerald, from the said 3rd day of May, 1897, until the 12th day of May, 1897, did languish, and languishing did live, on which said 12th day of May, 1897, the said David Fitzgerald, at the county of Jackson and State of Missouri, of the mortal blow, bruise, contusion, stroke, fracture of the skull and wound aforesaid, died. And so the grand jurors aforesaid, upon their

oaths aforesaid, do say that the said Thomas Hyland, him, the said David Fitzgerald, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought, did kill and murder against the peace and dignity of the State.''

On September 27, 1897, at said September term of said court, defendant was duly arraigned, and upon such arraignment entered his plea of not guilty to the indictment aforesaid. The defendant introduced no evidence. The uncontradicted evidence of the State shows that on the night of May 3, 1897, the defendant, the deceased and some other men were at the saloon of one Mulcahey, at 809 Independence avenue, Kansas City, Missouri, where they were drinking to some extent. That there was some talk about prize fighting; that there were no harsh words between defendant and deceased at this place. That deceased first left this saloon and went to Haney's saloon at the corner of Independence avenue and Holmes street, and entered the saloon there. That after lighting his cigarette, deceased left this saloon by passing through the screen door and stepped to the front of the saloon and was standing upon the sidewalk near the curbing in front of said saloon. That defendant and witness James Riley and other parties left Mulcahey's place after the deceased had left; that defendant walked up to the deceased and as deceased stood upon the sidewalk in front of Haney's saloon, spoke to the deceased, saying, "Hello, Rock" or "Dave," calling him by name, and as deceased turned round and said to defendant, "Hello, Tom," defendant struck deceased with his fist in and upon the head or jaw, knocking him down on the sidewalk or curb; that this blow was entirely unprovoked and uncalled for; that by the blow and fall deceased was rendered unconscious and

received four fractures in and about the head, from which, within eight days thereafter, he died; and all this occurred in Jackson county, Missouri. The proof further shows that defendant admitted the assault upon deceased to a witness orally and by written statement, all of which is fully set out in the record.

The case was presented to the jury upon this evidence upon instructions covering murder in the first degree, murder in the second degree and manslaughter in the fourth degree. The verdict was for murder in the second degree, fixing the punishment at ten years in the penitentiary and judgment accordingly. The defendant saved exceptions to the action of the court in giving the instructions it gave and to the refusal of defendant's instructions and to certain remarks of the prosecuting attorney.

The defendant's instructions which were refused are as follows:

"1. The court instructs the jury that even if you find and believe from the evidence that the defendant struck David Fitzgerald with his fist and that the blow caused the death of Fitzgerald, still if you further find that the blow was given in heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, without any undue advantage being taken, without any dangerous weapon being used, and not in a cruel and unusual manner, you will find the defendant not guilty.

"2. The court instructs the jury that the homicide is deemed excusable when committed by accident or misfortune in either of the following cases: *First*, in lawfully correcting a child, apprentice or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without unlawful intent; *second*, in heat of passion, upon any sudden or sufficient provocation, or upon sudden combat, with-

out any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner.

" 3.    To constitute the right of self-defense, the actual striking of a body is not necessary, nor is it necessary that the assailant be in a striking distance.

" 4.    The court instructs the jury that if they find and believe from the evidence that the defendant involuntarily and unintentionally killed David Fitzgerald, by means neither cruel nor unusual, in the heat of passion, and that the killing was not committed in the lawful defense of said Thomas Hyland, as defined in these instructions, you will find the defendant guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for not more than two years, or at imprisonment in the county jail not less than six months, or by a fine of not less than $500, or by both a fine of not less than $100 and imprisonment in the county jail not less than three months.

" 5.    The court instructs the jury that the involuntary killing of another by means neither cruel nor unusual, in the heat of passion, in any other case than justifiable homicide, shall be deemed manslaughter in the fourth degree.

" 6.    The court instructs the jury that homicide is deemed justifiable when committed by any person in the lawful defense of such person, and if you believe from the evidence that the defendant, Thomas Hyland, at the time he struck the deceased, if you find he did strike him, apprehended a design on the part of deceased to do him some great personal injury, and that there was a reasonable cause to apprehend immediate danger of such design being carried out, and defendant struck and killed deceased to prevent the accomplishment of such apprehended design, then the killing

is justifiable upon the ground of self-defense, and you should acquit. It is not necessary to this defense that the danger should have been real and actual, or that the danger should have been impending and immediately about to fall. If you believe that the defendant had reasonable cause to believe these facts, and that he struck deceased under such circumstances, as he believed, to prevent such expected harm, then you should acquit. To constitute the right of self-defense the actual striking of a blow is not necessary, nor is it necessary that the assailant be in striking distance.''

Those for the State were in the usual and ordinary form and need not be reproduced at length but may be noticed in the discussion of the case.

I. A more groundless appeal than this rarely reaches this court. The criminal court properly refused an instruction on the law of self-defense. There was not a scintilla of evidence tending to show any assault on defendant by deceased nor the slightest reason why defendant should have apprehended any design upon the part of deceased to kill him or inflict any bodily harm previous to the deadly assault which caused his death. We need go no further than defendant's own account of the homicide to find that deceased had neither done nor said anything to justify the cruel and deadly blow which defendant dealt him. The other witnesses say that Fitzgerald was standing alone on the sidewalk and that defendant approached him and saluted him in an apparently friendly tone of voice, and deceased responded in the same manner, whereupon without word or deed upon the part of Fitzgerald, defendant drew back and struck him in the face or on the head with his fist and with such violence that he fell upon the granitoid pavement, and from the blow in the first instance and the fall upon the hard pavement four fractures of the skull resulted:

two fractures on the left side in the temple region just about the articulation of the left jaw with the temporal bone; a fracture just back of the temple bone, and one in the bastard region. It would have been a strange conception of the law to have invited a jury to acquit on the ground of self-defense upon such a record as this.

II. Equally groundless was the first instruction asked by defendant. We repeat there was no evidence whatever that "the blow was given in a heat of passion upon any sudden or sufficient provocation or upon any sudden combat." No such facts can be found in this transcript, and it would have been unprecedented to have presented to that jury the law of excusable homicide. Every word of evidence in the case shows it was a wanton, inexcusable killing of an unoffending man and without notice to the unfortunate and clearly unsuspecting victim.

Alike unwarranted was the fourth instruction for manslaughter.in the fourth degree predicated upon the proposition that it was an involuntary and unintentional killing. There was no evidence upon which to base such a declaration of law, and the same may be said of the fifth instruction prayed by defendant and refused by the court. Each of said instructions was properly refused.

III. As the jury acquitted defendant of murder in the first degree it becomes unnecessary to discuss that instruction further than to say it was in the well approved form and there was no error in giving it. The court of its own motion gave the following instruction defining murder in the second degree:

"No. 4. The court instructs the jury that if you find from the evidence that the defendant, at the county of Jackson and State of Missouri, did at any time before the 24th day of September, 1897, feloniously, willfully, premeditatedly, on purpose and of his malice

aforethought, with his fist, strike, knock, hit, beat and kill David Fitzgerald you will find the defendant guilty of murder in the second degree and assess his punishment at any time in the state penitentiary not less than ten years." At the same time the court defined the words "willfully," "premeditatedly," and "malice aforethought."

This instruction has been so often approved that it no longer requires authority or argument to support it.

The evidence fully supported the charge in the indictment that defendant willfully, that is intentionally, premeditatedly, that is thought of beforehand, and of his malice, that is to say *in a state of mind devoid of social duty and fatally bent on mischief*, struck deceased with his fist and killed him and in so doing he committed murder. It was as much murder to kill deceased with his fist under the circumstances as if he had shot him with a loaded revolver or stabbed him with a sword. The mode of killing is not material, provided always that it be not so essentially different from that alleged in the indictment that it must be held a fatal variance between the allegation and the proofs. In this case no doubt whatever can exist that the blow was premeditated and unsuspected by the victim, that it was intentional and that defendant must be held to have intended all the natural consequences that ensued and that the death of deceased was the immediate and natural consequence of that blow. 2 Bish., New Crim. Law, sec. 635; *Rex v. Thompson*, 1 Moody C. C. 139; *Rex v. Kelly*, 1 Moody C. C. 113; *Harrell v. State*, 13 Tex. App. 374; *White v. State*, 13 Tex. App. 259.

IV. There was no error in failing to instruct upon voluntary manslaughter as the result of a sudden passion caused by a lawful provocation. There was no evidence of provocation in the case. While we think the court erred in instructing on involuntary man-

slaughter, it was on behalf of defendant and was in no sense prejudicial and constitutes no ground for reversing the cause. The instructions are not obnoxious to the criticism that they comment on the evidence.

V. Lastly, it is insisted that error occurred in not rebuking the statements of the prosecuting attorney in his argument that "crimes of this character are becoming too frequent" and to the further statement as follows: "The character of this man is not an issue in this case. It couldn't have been put in by the State. I say to you there is no evidence as to the character of this defendant, because Mr. Kimbrell didn't make that an issue in this case. If he had made that an issue in this case and opened the doors the testimony would have been before the jury. *He tells you that this man is a law-abiding man;* nothing against him, when he knew under the law we couldn't make that an issue. Isn't it a little bit singular that after living here twelve or fifteen years he couldn't produce a witness to show that he was that kind of man " Now as to these observations of the prosecuting attorney, there is absolutely nothing in the first. He merely voiced a truism. It is lamentably true that criminal acts like the one under investigation are too common. *State v. Emory,* 79 Mo. 461; *State v. Hopkirk,* 84 Mo. *loc. cit.* 288. As to the remark in regard to the character of defendant as a law abiding man, the prosecuting attorney correctly told the jury that no such issue had been tendered and the character of the defendant had not been shown, and the State could not have made it an issue in the first instance. On its face it shows that it was a legitimate reply to the unsupported assertion that defendant was a law abiding man with nothing against his character. The prosecuting attorney very properly insisted there was no such evidence and if defendant desired his good character to be considered as a part of his

defense he ought to have produced at least some one witness that he was that kind of a man.

There is no merit in the contention that there was error in rebutting defendant's unfounded statement that he was a law abiding citizen. He had no right to inject that issue into the argument and complain if it was promptly met and refuted.

The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.