# THE STATE v. JOHN, Appellant.

## Division Two, February 24, 1903.

1. **Criminal Law: MURDER: WEAPON: STRIKING WITH FIST.** Murder may be committed by one person's killing another by a blow with the fist, just as much as by the use of a loaded revolver or other deadly weapon.

2. **———: ———: NO PROVOCATION: ASSAILANT'S INTENT: PRESUMPTION.** A man is presumed to intend the natural and probable consequences of his acts. A strong man will not be allowed to approach an unoffending citizen in a public highway, and deal him a deadly blow with his fist in a vital part and, when death ensues, be heard to say that he merely intended to punish him and not to kill him.

3. **Murder: SECOND DEGREE: CASE STATED.** Defendant was a dog-catcher and, on the morning of the killing, in company with another engaged in the same business, was endeavoring to catch some stray dogs on a city street. The excitement produced by the efforts of defendant and his companion to catch the dogs, attracted a number of persons to the scene, among them being Richter, the deceased. Some boys began barking after the manner of a dog, jeering at defendant and his comrade. Defendant became incensed at this conduct of the boys, and, threatening to kill some one of the crowd, he singled out Richter and without warning struck him a blow upon the jaw with his fist, felling him to the sidewalk. Eight days later Richter died from the wounds. Defendant testified that Richter tripped him; that "he stuck out his foot and I fell;" but this was denied by all the other witnesses. *Held*, that, upon this evidence, the trial court properly instructed on murder in the second degree; *and* that defendant's testimony was correctly covered by the instruction on manslaughter in the fourth degree.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

AFFIRMED.

*Truman P. Young, E. E. Schnepp* and *Wm. Scullin* for appellant.

(1) The evidence taken as a whole did not warrant an instruction on murder in the second degree. State

v. Wieners, 66 Mo. 13; State v. Wilson, 98 Mo. 448; State v. Palmer, 88 Mo. 568; Wellar v. People, 30 Mich. 16; People v. Munn, 65 Cal. 211; Henry v. State, 33 Ga. 441; Patterson Case, 3 N. Y. City Hall Recorder 145; 2 Bishop, Crim. Law, sec. 734; Commonwealth v. Webster, 5 Cush. 307.     (2) The instruction should have stated that there could be no murder without an intent to kill, either express or implied. State v. Wieners, supra; State v. Wilson, 98 Mo. 440; State v. Gassert, 65 Mo. 352.     This case is, we think, distinguishable from State v. Hyland, 144 Mo. 302, the circumstances of which, perhaps, justified a presumption of malice. If not distinguishable, however, we expect that case to be overruled, and it is largely to test the authority of that case that this appeal is taken.     (3) On the question of provocation the second instruction should not have confined the jury to the tripping of the defendant.     There was other evidence of provocation.     John Rapp had testified that stones were thrown and that one of them hit him back of the ear and drew blood.     Such acts were themselves provocation and the jury should have considered them.     The evidence tended to show that there was a general row there.     Greenleaf says: "Voluntary manslaughter is where one kills in the heat of blood, and this usually arises from fighting or from provocation."     3 Greenleaf, Ev., sec. 121.     See separate opinion by Judge BLACK, in State v. Wilson, 98 Mo. 450.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1)   The indictment is sufficient.   State v. Hyland, 144 Mo. 302; State v. Lowe, 93 Mo. 572.   (2) The evidence in this case shows the act of the defendant was intentional and that he thought of it beforehand and that he was possessed of a mind devoid of social duties and fatally bent on mischief.   These are the elements which constitute the crime of murder in the second degree, and the court was fully warranted, these facts being fully proved, to submit this issue to the jury.

The mode of killing is immaterial. State v. Hyland, 144 Mo. 302; 2 Bishop's New Criminal Law, sec. 635; Rex v. Moody, C. C. 139; Harrell v. State, 13 Tex. App. 374; White v. State, 13 Tex. App. 259; State v. Castello, 62 Iowa 404. If one actually causes the death of another, the precise means which he employs are immaterial, except in so far as they may serve to show the intent. The only inquiry permissible is, whether there is such a relation between the act of the defendant and the death of the deceased as to prove beyond a reasonable doubt, that such act was the efficient cause of the death. 2 Bishop's New Criminal Law, sec. 636; 21 Am. and Eng. Ency. of Law, pp. 94 and 97; State v. Hyland, 144 Mo. 302; State v. Castello, 62 Iowa 404. It is no answer to this charge for the defendant to say that the death of deceased was caused by his head striking the pavement; and not by the blow delivered by defendant. The blow struck by defendant was the ''cause of the cause'' of Richter's death, and no more is required. 2 Bishop's Criminal Law, sec. 639; State v. Landgraf, 95 Mo. 102; 21 Am. and Eng. Ency. of Law, p. 94. (3) It is not necessary that defendant struck the deceased with a specific intent to kill him. He certainly intended to inflict upon him great bodily harm. When death ensues under such circumstances, the defendant is guilty of murder. State v. Jennings, 18 Mo. 435; State v. Neuslin, 25 Mo. 125; Scott v. State, 37 Ala. 117; State v. Decholts, 19 Iowa 447; 2 Bishop's New Criminal Law, sec. 676.

GANTT, P. J.—The defendant was indicted at the October term, 1901, of the circuit court of the city of St. Louis and was regularly assigned to the criminal division of said court (No. 9) presided over by Judge Franklin Ferris.

The charge was murder in the second degree. Henry Richter was the victim. The substantial averment is that defendant, on the third day of July, 1901,

at the city of St. Louis, "with force and arms in and upon one Henry Richter in peace of the State then and there being feloniously, willfully, premeditatedly, and of his malice aforethought did make an assault and that the said Edward John then and there feloniously, willfully, premeditatedly and of his malice aforethought with his fist in and upon the jaw and head of him, the said Henry Richter, did strike, knock, hit, and beat and did then and there feloniously, willfully, premeditatedly and of his malice aforethought knock, push, cast and throw him, the said Henry Richter, with great force and violence down, in and upon the pavement, brick sidewalk and stone curbing then and there being and the said Edward John thus and thereby then and there feloniously, etc., by the means aforesaid, then and there did give the said Henry Richter one mortal wound and fracture of the skull, of which mortal wound so as aforesaid inflicted by defendant, the said Richter languishing did live from the third day of July, 1901, till the eleventh day of July, 1901, on which last-named day the said Richter died at the city of St. Louis."

The indictment is in all respects according to the most approved precedents. We have merely set forth the substance.

Defendant was duly arraigned and pleaded not guilty. He was tried December 5, 1901, and convicted of murder in the second degree and sentenced to the penitentiary for fifteen years.

The circumstances attending the homicide were as follows:

The defendant, at the time of the occurrence related in this record, was a dog-catcher. The deceased was a laborer, forty-three years of age. On the morning of the tragedy, the defendant, in company with another who was engaged in the same business, was going to his work, and about the hour of 6:30 o'clock as the deceased and other laborers were going to their daily toil, one of these dog-wagons and its occupants were observed. The wagon contained the defendant and his associate and a driver; and as they were passing the

intersection of Howard street and Broadway, in that city, they spied some dogs that were wandering thereabout. The defendant and his associate left their wagon and made an effort to seize and impound the dogs. The pursuit of the dogs by the defendant and his partner attracted the attention of the deceased, who stopped, as did others, to gratify their inherent curiosity or to enjoy the pursuit of the dogs. Some boys near by began barking after the manner of a dog, and jeering defendant and his comrade. This conduct on the part of the boys seemed to arouse the ire of the defendant. The State shows by an overwhelming amount of evidence that the defendant walked up to the deceased, who was standing somewhat apart from the crowd, with his coat on his arm and with his dinner pail in the other hand; that the defendant, without justification or excuse, immediately struck the deceased upon the jaw and that the deceased fell upon the sidewalk and that, either from the blow or the fall, or both combined, he received a mortal wound producing a contusion and laceration of the brain which rendered him unconscious, in which condition he remained until his death, eight days later.

There was a perfect unanimity of expression by all the witnesses, save the defendant, that the deceased was inoffensive and unoffending. He was immediately taken to his home and on the following day was removed to the Good Samaritan Hospital, where his skull was trephined, but the operation did not subserve the end sought and the deceased died on July 11, 1901. The State proved that the skull of the deceased was fractured, the brain lacerated and contused, and that the injuries were such as to inevitably cause death. The defendant, immediately on striking the blow, hurriedly sought his wagon, got in it, and drove rapidly away, and was arrested the same morning and admitted he struck the deceased.

The evidence on behalf of the defendant tended to show that he was pursuing a dog; when he passed the deceased he was tripped by him and fell. He testified that when he went to rise, he was kicked in the breast

and hit in the ear by some one and that, therefore, he struck the deceased. But he does not say that the deceased kicked or struck him, or that he did anything save trip him. Indeed his own testimony does not show that the deceased intentionally tripped him; he simply stated "that he stuck out his foot and I fell." . The defendant was not supported on this point by any of the witnesses, who did not seem to be prejudiced against the defendant and most of whom were strangers to the deceased. They testified no such thing occurred. The court instructed the jury on murder in the second degree and manslaughter in the fourth degree and gave the usual instructions on reasonable doubt, credibility of witnesses, etc.

The indictment as already said was in all respects sufficient if murder can be committed by one person killing another by a blow with his fist. In State v. Hyland, 144 Mo. 302, we held that it was as much murder to kill a man with his fist in the circumstances of that case as if the defendant had shot him with a loaded revolver. [People v. Munn, 65 Cal. 211.] The facts of this case are in all respects the counterpart of that. Counsel have, however, respectfully urged a reconsideration of the Hyland case. In that case, as in this, the indictment charged not only that the defendant struck his victim with his fist, but knocked him down with great force and violence on the stone pavement and by the combined force of the blow and the fall on the hard pavement the mortal wounding was accomplished.

In Rex v. Kelly, 1 Moody 113, it was conceded that if the indictment had charged the blow with the fist and the fall, it would have been sufficient, but as it was charged to have been with a brick in the right hand of the prisoner, it was a variance.

Counsel cite us to Wellar v. The People, 30 Mich. 16, in which the Supreme Court of Michigan points out that whether a person who has killed another without meaning to kill him is guilty of murder or manslaughter, the nature and extent of the injury or wrong which was

Vol 172 mo—15.

actually intended must be of controlling importance. This has always been the doctrine of the common law, but in that case the trial court did not submit to the jury whether the defendant in that case might not be guilty of manslaughter only. The case is well reasoned but the facts are unlike those in Hyland's case or the case at bar.

In this case the defendant alone of all the witnesses states that as he passed the deceased "he stuck out his foot and defendant fell." He does not even say that deceased intentionally tripped him, but upon this state of facts the court gave an instruction on manslaughter in the fourth degree. The contention of defendant's counsel is that there was no evidence to support the charge of murder in the second degree. In a word, that the character of the assault was such that the jury were not justified in finding that defendant intended to kill or do the deceased any great bodily harm; counsel concede that the manner of killing is immaterial; that one may be guilty of murder with his fist as well as with a deadly weapon, but say "though the manner is immaterial, the intent with which the act is done and circumstances surrounding the act as throwing light on that intent, are material." This is all true, but it ignores the want of any mitigating facts save that which defendant testified to, the tripping of defendant, as to which the court gave him a most favorable instruction on manslaughter. All the other, and we may add, disinterested, evidence disclosed that the deceased was a perfect stranger to defendant; that he merely halted a moment on the sidewalk, attracted by the excitement produced by the defendant and his companion's effort to catch the stray dogs; that he was apart from the crowd who were watching the defendant and his companion pursue the dogs, and that defendant, apparently incensed at the boys who were barking, threatened to kill some of the crowd, and then, without the slightest provocation by word, gesture or act on the part of the inoffensive and unoffending workman who was merely looking on, singled him out and came up to him and

without warning struck him the murderous blow which instantly felled him to the sidewalk. How can counsel argue that such a blow under such circumstances was not intended to produce great bodily harm?

The court properly instructed the jury that a man is presumed to intend the natural and probable consequences of his acts. It was not a case in which there was a mutual combat with fists or a lick with a stick not calculated to produce death, but a malicious unprovoked attack upon a defenseless and unsuspecting citizen who had given no provocation and was utterly ignorant of the intended assault. Such an act was malicious in and of itself and clearly felonious.

A strong brawny man will not be allowed to approach an unoffending citizen in a public highway and deal him a deadly blow with his fist in a vital part and when death, the natural consequence of his act, ensues, be heard to say that he merely intended to punish him and not to kill him. The facts of this case disclose unmitigated brutality, conduct much in keeping with the business in which defendant was engaged.

We have no hesitancy whatever in holding that the trial court properly instructed on murder in the second degree and that the jury properly found defendant guilty of that offense. The record is without error and the judgment is affirmed.

*Burgess* and *Fox, JJ.*, concur.