**STATE of Missouri, Respondent,**

v.

**Elma Jean LAMBORN, Appellant.**

No. 54392.

Supreme Court of Missouri,
Division No. 1.

April 13, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Esco V. Kell, West Plains, for defendant.

HOUSER, Commissioner.

Elma Jean Lamborn, convicted of second degree murder in connection with the death of a 6-year-old child and sentenced to 30 years' imprisonment, has appealed.

There was substantial evidence to support the conviction. An undertaker, called to a trailer court in Shannon County on the morning of February 28, 1968, picked up the body of 6-year-old Mary Elizabeth Lamborn at the trailer house belonging to her father, Christopher Lamborn, and took the body to the funeral home. Defendant, who was not married to Christopher Lamborn, lived there with him and his five children by a woman from whom he was divorced. While inspecting the body preparatory to embalming, the undertaker observed bruises of different sizes all over the body, from the size of a dime to "five inches around." He immediately called Dr. Penton Wilson, the county coroner, an osteopathic physician and surgeon who observed at least 100 bruises and scratches over the body, varying in size from the end of a finger to the size of a silver dollar. There was a bruise on the head the size of a man's fist. In his opinion the bruises were of traumatic origin. Due to differences in the degrees of discoloration he believed that some of the bruises were made earlier than others. Dr. Wilson took the body to the medical center at the University of Missouri at Columbia, where an autopsy was performed by a pathologist. The autopsy revealed that the vital organs of the child were in a perfectly healthy condition, except for the right side of the brain, in which there was a subdural hematoma (described as a blood tumor) the size of the doctor's fist. There was a hairline fracture an inch or an inch and a half long at the base of the skull on the right. The fracture and hematoma were of traumatic origin. It would "take a pretty forceful blow to fracture that skull." The coloration of the hematoma suggested that the bleeding had occurred over a period of several days. The swelling of the brain caused pressure which paralyzed the vital organs, causing death. He was of the opinion that the death occurred the previous night and that the blows or traumatic origin which caused the hematoma occurred one, two, or three days before death. The child's father, who testified that he was serving a 30-year penitentiary sentence for "whipping" this child, gave evidence that he saw defendant strike the child on four occasions; that defendant beat the child up against the wall, picked her up by the ankles and "slung" her "around all over the place," and "slung it [the child] against the bathtub," while holding the child by the ankles. Mary Elizabeth's 11-year-old sister testified that the child was found dead in bed on the morning of February 28; that at the supper table the previous evening her father slapped her and that defendant took her head and beat it up against the window and the bottom of the window. At the supper table the child could not swallow, and the father "got after her" because she would not eat. The sister further testified that during the previous week both defendant and her father beat Mary Elizabeth's head against the wall and whipped her many times.

A state highway patrol evidence technician observed the body prior to the autopsy and took photographs, which the circuit judge excluded on objection on the ground that the pictures were highly inflammatory and prejudicial. The technician's testimony confirmed the existence of bruises all over the body ranging in size from small to bruises that "completely encircled the ankles."

Appellant offered no evidence and gave no testimony except the bald and unsupported statement that she was not guilty of murdering the child, and her denial that she took the child's head and slammed it up against the wall.

Appellant contends that the evidence was insufficient; that no deadly weapon was used and no malice was shown. The foregoing evidence was sufficient for the jury to find that defendant wilfully, feloniously, premeditatedly, on purpose, and of her malice aforethought took the life of this child by inflicting blows upon her body by the use of defendant's hands. It was as much murder for defendant to kill deceased in the manner described in evidence as if she had shot her with a pistol or stabbed her with a knife. It is not necessary to a conviction of murder that a deadly weapon, or any weapon, be used. State v. Hyland, 144 Mo. 302, 46 S.W. 195; State v. John, 172 Mo. 220, 72 S.W. 525; State v. Rizor, 353 Mo. 368, 182 S.W.2d 525; State v. Lawson, 360 Mo. 95, 227 S.W.2d 642; State v. Taylor, Mo.Sup., 309 S.W.2d 621. The mode of killing is not material as long as there is no fatal variance between charge and proof. State v. Hyland, supra. Murder may be committed with the hand or fist. State v. Taylor, supra. Defendant is held to have intended all the natural consequences of her intentional, premeditated and brutal mistreatment of this child, and there can be no doubt that the child's death was the natural consequence of the blows administered by this defendant. We note the further testimony of the father that defendant and the child did not get along; that defendant did not like the child. The evidence justified a finding that defendant was of a mind to take the life of the child without any cause, justification or excuse, and that her conduct signified a state of the mind which showed "a heart regardless of social duty and fatally bent on mischief."

There was no duty to instruct on the crime of manslaughter. There was no evidence of provocation, justification, excuse, culpable negligence, or that the killing was done in the heat of passion. There must be proof of facts tending to show want of premeditation and malice to warrant an instruction on manslaughter. State v. Williams, Mo.Sup., 442 S.W.2d 61, 64 [5]. As indicated, there was ample evidence of premeditation and malice in this case.

Section 546.260, RSMo 1959, V.A.M.S., relating to liability to cross-examination as to any matter referred to in his examination in chief, was not violated. On direct examination defendant gave her name and testified that she was not guilty of the charge of murdering Lizzie Lamborn. On cross-examination the prosecuting attorney asked "What is your last name?" An objection to this question was sustained. He then asked her if she was married. The court sustained an objection to that question and admonished counsel that he could not cross-examine except as to what she had been asked on direct examination. The prosecutor then said, "Mrs. Elma Jean, you say you're not guilty?" She answered "That's right." The prosecutor then asked, "Did you take little Mary Elizabeth's head and slam it up against the wall?" An objection to this question was overruled and defendant answered "No, sir." Then the court sustained an objection to a question whether she observed any marks or bruises on the body of Mary Elizabeth before the morning of February 29, 1968, and that ended the cross-examination. Thus the record shows that except for the inquiry as to whether she was guilty and whether she had slammed the child's head up against the wall, objections were sustained as to all other questions. The court did not err in permitting the state to ask and defendant to answer the question whether defendant took the child's head and slammed it up against the wall. This question was with-

in the purview of the question asked on direct whether she was guilty or not guilty. In cross-examining a defendant who takes the stand in her own behalf and enters a sweeping denial of the charge the state is not confined to a mere categorical review of the evidence given by defendant on direct examination, but may examine her in detail as to matters generally referred to in the examination in chief. State v. Scown, Mo.Sup., 312 S.W. 2d 782, quoting as follows from State v. Kaufman, Mo.Sup., 254 S.W.2d 640, 642: " * * * in this case, defendants' sweeping denial of the theft was a statement of fact in such a general way as to open for cross-examination in detail the whole subject of whether or not they committed it; * * *."

No error appearing, the judgment of conviction is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and GODFREY, Special Judge, concur.