THE STATE v. JONES, *Appellant.*

The judgment in this case is reversed because the evidence fails to identify the defendant as the guilty party.

*Appeal from Mercer Circuit Court.*—Hon. G. D. BURGESS, Judge.

REVERSED.

*H. J. Alley* and *Hyde & Orton* for appellant.

*J. L. Smith,* Attorney-General, for the State.

HENRY, J.—The defendant, Jefferson Jones, was indicted and convicted of stealing a mare, the property of James Cleveland, and sentenced to the penitentiary for a term of two years. From the judgment he has appealed. The evidence for the State was as follows: James Cleveland testified that he had a mare stolen about the 5th day of November, 1877, in Mercer county, about fifteen miles north of Princeton, and found her at George Brown's. George Brown testified that he had her in his possession two or three weeks, and purchased her of a man who said his name was Reed, but could not state that defendant is the man. He looks like the man, but could not swear that he was the man. C. E. Minter, sheriff of Mercer county, testified: "I went with Brown and Hammond and Warden to arrest the defendant; when we got up toward or near the house, the defendant came into the yard, and, before we got up near enough to speak to him, I asked the men with me if he was the man." The court sustained an objection to his stating what this reply was, but the witness, nevertheless, stated that they said he was the man. Witness continued: "He, the defendant, slipped behind the house and ran into the brush, and we did not get him. The next time I saw the defendant, the sheriff of Harrison county delivered him to me." James M. Ally, constable of Marion township in Mercer county, with whom the sheriff left the warrant, testified: "I did not arrest him, I got in sight of defendant and said: Jeff, I have got you now! I went in at one door and he ran out of the other one and got away. The next time I saw him was after the arrest. I made search for him, but never got sight of him but that one time." Warden testified that he went with Sheriff Minter, Brown and Hammond to show them where Jeff. Jones lived; saw the defendant at his house; rode up to his house. Defendant came from behind the house toward where witness and the others were. Minter hallooed to him to come up, and defendant said something

and ran. Think he said, " I know what you want." Wm.
Kirk testified for the State : " I know the defendant when
I see him. I saw the man who sold the horse in contro-
versy to George Brown. I and Jacob Bane were together
and saw him a short time before he sold the mare to Brown.
I was with Mr. Bane who said it was Ike Jones. Bane
spoke to him and called him Ike Jones. He looked some
like the defendant, but I don't believe defendant was the
man." The State rested.

For defendant Jacob Bane testified: " I recollect
when Geo. Brown bought the mare. I was with Kirk
when the mare was ridden through, and saw the man who
sold her to Brown. Fifteen or sixteen years ago I was ac-
quainted with the Jones boys, defendant and his brothers.
When I saw the man with the mare, I called him Ike
Jones, and he did not correct me. I was at Princeton at
the term of court just before that and saw Ike Jones on
the jury. The man I saw looked a little older, and a little
heavier, but not so tall as defendant." He afterward said,
that after he called the man Ike, he reflected about it, and
thought Ike was older, and when asked if it was his im-
pression that the defendant was the man who sold the
mare to Brown, said he would not state that. Wells testi-
fied that in October and November, 1877, he was feeding
hogs with defendant in partnership, and saw defendant at
home every day from the last of October to the 12th day
of November. Acquainted with defendant and Ike Jones.
The latter is older and heavier than defendant, but not so
tall. Ike was in the county when the mare was stolen, but
left shortly after, or about that time and went to Kansas.
Samuel Reed, for defendant, testified that he was working
for the defendant when Cleveland's mare was stolen ; had
been working for him a week before the time he heard she
was stolen; defendant was not away from home during
the time witness worked for him, in all about two weeks.
John Snyder testified that he had known Ike and defend-
ant since they were children; had lived close by them for

38—71

many years; Ike was the oldest two or three years; Jeff was next to him; Ike was the heavier of the two, but not so tall, and left the county soon after Cleveland's mare was stolen; he and Jeff resemble each other; both have sandy hair and whiskers, and are of red complexion.

This was all the evidence in the case, and the State signally failed to identify defendant as the man who sold the mare to Brown. The only evidence of guilt against the defendant whatever is the fact, if a fact, that he ran from the sheriff and from the constable; but it is by no means certain from the testimony that he was the person who ran. Neither Brown nor Hammond, nor any witness, recognized the defendant as the man who sold the mare to Brown, or who ran from defendant's house. They say that they recognize the man who ran as the man who sold the mare, but it is probable, from the evidence, that it was Ike Jones; and, considering the resemblance between the brothers, in connection with the testimony of Kirk and Jacob Bane, and the refusal of any witness to state that defendant was the man who sold the mare to Brown, the defendant was entitled to an acquittal. There was no evidence, as preserved in the bill of exceptions, to sustain the conviction. The judgment is, therefore, reversed and the cause remanded. All concur.