THE STATE v. ALBERT G. BUTLER, Appellant.

Division Two, February 19, 1913.

1.  TESTIMONY AT PRELIMINARY HEARING: Transcript Admissible by Defendant at Trial When Witness is Out of the Jurisdiction: Murder. The transcript of a witness's testimony at the preliminary hearing on a criminal charge is admissible when offered in evidence by the defendant at the trial, upon a showing that the witness is not within the jurisdiction, that the State had opportunity to cross-examine him, that the subject-matter is material to the issues, and where there is no claim that the absence of the witness is by any procurement or connivance of defendant.

2. **HOMICIDE: Provocation: Evidence.** Evidence *held* to disclose no provocation sufficient in law to reduce a homicide from murder to manslaughter.

3. ————: **Reference to Defendant's Letter Concerning Deceased's Sister: Letter not in Evidence: Instructions.** Where the evidence disclosed that defendant in this prosecution for murder had written a letter containing remarks about deceased's sister which angered deceased's family, but neither the letter nor its contents was put in evidence, the defendant was entitled to have the jury's attention called to the fact that the letter was not in evidence and that they should not consider it or any of its suggested contents, in passing upon the guilt or innocence of defendant, but the trial court rightly refused an instruction, that the fact, if it was a fact, that just before the killing "the defendant stated that the statements contained in said letter were true, did not authorize or warrant the deceased . . . to attack or assault . . . the defendant," etc.

4. ————: **Refused Instructions: Points Covered by Others.** There is no error in the court's refusal in a criminal case to give instructions asked by defendant where the points in question are fully covered by other instructions given by the court.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*Frederick A. Mayhall* and *Barclay, Fauntleroy, Cullen & Orthwein* for appellant.

(1) The court erred in holding the testimony of the absent witness, given on the preliminary hearing, was inadmissible. When a witness is absent from the jurisdiction of the court the testimony of such witness given on the same issue before the court holding the preliminary examination is admissible when offered by the defendant. Greenleaf on Evidence (16 Ed.), secs. 163-166; 2 Wigmore on Evidence, secs. 1364, 1375, 1401; 5 Ency. of Evidence, 314, 883; State v. Riddle, 179 Mo. 297; State v. Rose, 92 Mo. 201; State v. Nicholas, 149 Mo. App. 126; State v. Brown, 132 N. W. (Ia.) 862. This testimony being offered by the defend-

ant no question is presented involving the constitutional rights of the defendant. The offer of this testimony presents substantially the same question as if the defendant had taken depositions and offered to read them. Ex parte Wellborn, 237 Mo. 297; R. S. 1909, secs. 5173, 297; State v. Dusenberry, 112 Mo. 292; People v. Bird, 64 Pac. (Cal.) 260; State v. Nicholas, 149 Mo. App. 126; Wigmore on Ev., sec. 1401b. The rule in regard to the admission of evidence given at a previous trial is the same in civil and criminal cases when the evidence is offered by the defendant. U. S. v. McComb, 5 McLean, 286; Parks v. Commonwealth, 63 S. E. (Va.) 463; Wigmore on Ev., sec. 1401b. It has been ruled by nearly all the appellate courts in this State that testimony given on a former trial in a civil case may be received if the witness is out of the jurisdiction of the court, or cannot be found after diligent search. Scovell v. Railroad, 94 Mo. 86; Wine Co. v. Weippert, 14 Mo. App. 485; Franklin v. Gummersell, 11 Mo. App. 314. The celebrated cases cited below are not in point on the proposition which we present, because in each instance the testimony was offered by the State and not by the defendant, and the question of constitutional right of the defendant was the question which controlled each decision. State v. McO'Blenis, 24 Mo. 402; State v. Baker, 24 Mo. 437; State v. Houser, 26 Mo. 440; State v. Moore, 156 Mo. 40. (2) The court erred in refusing to instruct the jury that they might find the defendant guilty of manslaughter in the fourth degree. The jury returned a verdict assessing the punishment of defendant at ten years, the lowest possible punishment for murder in the second degree. Therefore, the failure of the court to instruct on manslaughter in the fourth degree is directly presented by the record in this case. The defendant specifically requested the court to instruct on manslaughter in the fourth

degree and saved an exception because the court failed and refused to do so. We insist that the following principles of law are applicable to this point: (a) Where several persons act together in ill-will toward another, insulting language or conduct addressed to him by one of them is properly regarded as the act of all. Willis v. State, 90 S. W. 1100. (b) In this State it has been held that opprobrious words in connection with vexatious acts and conduct are sufficient provocation to reduce a resultant killing from murder to manslaughter if they are of such character as to excite the passions of the mass of men so as to enthrall their reason. State v. Garrison, 147 Mo. 548; State v. Grugin, 147 Mo. 39; State v. Hudspeth, 150 Mo. 12. (c) An assault too slight in itself to be of sufficient provocation may become such by being coupled with insulting words. State v. Elliott, 98 Mo. 150; State v. Howard, 102 Mo. 142; State v. Hudspeth, 150 Mo. 12; Burley v. Menefee, 129 Mo. App. 518. (d) An apparent attempt to make a deadly assault or an assault with a deadly weapon in connection with previous threats to kill, known to the person threatened, is sufficient to require a charge of manslaughter where he kills a person apparently about to attack him. State v. Heath, 221 Mo. 559; Johnson v. State, 22 Tex. App. 206; Silgar v. People, 107 Ill. 563; People v. Palmer, 96 Mich. 580; Stacy v. State, 86 S. W. 327; Swain v. State, 86 S. W. 335; Thompson v. State, 32 Tex. Crim. Rep. 1; State v. Clay, 201 Mo. 679. (e) There may be an assault without personal injury if any unlawful attempt is coupled with the present ability to commit a violent injury, and this although the assailant failed to commit the injury intended. Smith v. Smith, 33 Atl. 441; Mailand v. Mailand, 86 S. W. 445; Bishop v. Ranney, 7 Atl. 220; State v. Smith, 80 Mo. 516; Norris v. Whyte, 158 Mo. 20; 1 Words & Phrases, "Assault."

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

The noted case of State v. McO'Blenis, 24 Mo. 402, held that the deposition of a witness taken at a preliminary examination before a committing magistrate in the presence of the accused, may be received' in evidence on the trial upon the proof of the death of such witness. This decision is cited with approval in State v. Moore, 156 Mo. 1. c. 210, and the parallel cases of State v. Houser, 26 Mo. 431, and State v. Harman, 27 Mo. 27, are also cited. From the Missouri decisions we conclude that the rule is well stated in State v. Nicholas, 149 Mo. App. 127, where it is said: "The question in this State was settled in the affirmative that such evidence is competent only when the witness is dead, and in the negative that the evidence is incompetent when the witness is living, although beyond the jurisdiction of the State." Appellant contends that the rule did not apply to evidence offered by the defendant, because the constitutional right that accused may be confronted by the witnesses against him does not arise. But this contention is contrary to the holding in State v. Rose, 92 Mo. 201.

WILLIAMS, C.—Upon trial had in the circuit court of the city of St. Louis, defendant, under an information charging him with murder in the first degree, was convicted of murder in the second degree for the killing of Eugene Walsh on August 6, 1911, in said city, by shooting him with a pistol. The plea was self-defense. The punishment was assessed at ten years in the penitentiary, and by proper steps defendant brings the case here for review.

The evidence for the State tended to show that the deceased, Eugene Walsh, at the time of his death

lived with his mother, younger brother, Joseph, and two younger sisters, at 7017 Bruno street, in the city of St. Louis. He was about twenty years of age, strong and muscular, and weighed about one hundred and eighty pounds. Defendant was also a young man, and during the latter part of 1910 and early part of 1911 had roomed at the Walsh home, and had taken his meals at the Dion boarding house, No. 7145 McCausland avenue, about 150 feet northeast of the Walsh house. A small plot of ground, lying east of the Walsh house, and running up to the south side of the Dion house, and which adjoined on the northeast the intersection of the two above-named streets, was vacant, so that the porch of the Dion house was in plain view from the Walsh house. During the time defendant roomed at the Walsh house he was attentive to Miss Nellie Walsh, sister of the deceased, taking her to church and places of entertainment. After defendant ceased rooming at the Walsh house he went to North Carolina, and wrote several letters to deceased's sister, but apparently his suit did not meet with favor, and his letters were returned to him. He returned to St. Louis about July 25, 1911, and visited the Walsh house, and attempted to establish friendly relations with Miss Walsh, but was unsuccessful. Deceased, at or about that time, told defendant to stay away from the house and not bother them any more. Defendant never came to the house after that time till the day of the tragedy.

On Sunday afternoon, August 16, 1911, at about 12:30 o'clock, Mrs. Walsh, mother of the deceased, saw defendant standing on the Dion porch, and directed her son Joe to go over and tell defendant to come to the Walsh house. Joe immediately went over to the Dion house and called to defendant to come down into the yard. Defendant accepted the invitation, and Joe asked him what he meant by making false statements in a letter to Frazer about his sister. Defend-

ant denied making any false statements, but said that everything in the letter was true. Then Joe Walsh asked defendant to go over to the Walsh house and prove the statements of the letter in the presence of his sister. About that time Frazer, who was a boarder at the Dion house and a roomer at the Walsh house, came out of the Dion house, and the three walked together over to the Walsh house, stopping in the yard in front of the porch. About this time two other young men, Medley and Maher, came up, and were standing in the yard near the other persons. Mrs. Walsh stood in the front door as they came up, and called her daughter, Nellie, and both came out on the front porch. Defendant said, "Nellie, don't have any hard feelings toward me." She replied, "I hate you." Defendant then said, "You know we were engaged for over twelve months." She denied this, and Joe interrupted the conversation by saying to the defendant that what they wanted to know was whether the statements made in the letter were true. Defendant turned towards Nellie, and said, "You unfolded it, and showed me all." Nellie screamed, and said it was a lie. When she screamed, defendant retreated towards the street by walking backwards, going in a southeasterly direction. At this time, the deceased, who had been upstairs taking a bath, came down, and rushed out on the porch towards defendant, ordering him off the premises. Deceased was dressed in an undershirt and trousers, and shoes, without sox, and was holding his trousers with one hand and motioning towards defendant with the other. Defendant continued backing away from the premises, and deceased continued walking towards him. When defendant had retreated a distance of twenty or twenty-five feet, and deceased had approached to within about four feet of him, with his arm and hand extended towards defendant, the latter drew a revolver and fired one shot. The bullet struck the deceased in the forehead,

penetrating the brain, and causing instant death. Deceased's face was considerably powder burned, indicating close proximity to the pistol when it was fired. When deceased was shot he fell forward on his hands and knees, falling on the cinder sidewalk southeast of the Walsh residence. Defendant was arrested shortly after the shooting.

The testimony for the defense contradicted the State's evidence as to the position of some of the persons at the scene of the shooting, and also as to the demeanor of deceased as he approached defendant just before the shooting. Defendant testified that on Saturday evening, the day before the tragedy, in the presence of himself, Mrs. Walsh and James McHugh, out near a swing on the vacant lot, the deceased told him that the next time he saw him he was going to brain him. Mrs. Walsh testified that she did not hear deceased make the threat. The other living witness, McHugh, was not present at the trial. McHugh's brother testified that the absent witness was then living in Cincinnati or in Alabama. Defendant's subpoenas for witness McHugh were returned *non est.* This witness testified at the preliminary hearing before the committing magistrate that he heard deceased make the threat. A transcript of this evidence, showing that the witness had been cross-examined by the State, and the authenticity of which was admitted by the State, was, after showing first being made of above facts, offered in evidence by defendant, but the offer was refused, and defendant saved an exception. Defendant further testified that when Joe Walsh came to invite him down to the Walsh house, just prior to the shooting, he said, "I am going to break your damned head for the letters you wrote about my sister," but that later, and before going down to the Walsh house, Joe assured defendant that there would be no trouble if he went with him; that after the conversation with Joe Walsh and Nellie Walsh, at the

front porch, the deceased, Joe Walsh, Frazer and
Medley, all started towards him, uttering threats of
violence, and that he retreated, saying to them,
"Stand back—don't come near me," that when he
reached the sidewalk he heard some one rushing upon
him, and that he then turned and saw deceased rush-
ing at him "in a violent and desperate way," with
one hand upraised, reaching for him, and the other
concealed behind his body. He called out to de-
ceased, "You have gone far enough—stand back,"
but deceased continued towards him, and he then fired
his pistol at deceased to stop the threatened attack,
he believing that deceased would kill him.

Several witnesses testified that defendant bore
à good reputation as a peaceable and law-abiding citi-
zen in the community in which he lived.

Defendant complains of the rulings of the court,
(1) in refusing to admit the testimony of witness Mc-
Hugh given at the preliminary hearing; (2) in fail-
ing to instruct on manslaughter in the fourth degree;
(3) in refusing certain instructions asked by defend-
ant.

I.   During the argument of this case before this
court, a dispute arose between contending counsel as
to whether the bill of exceptions showed
that defendant had offered the testi-
mony of witness McHugh and saved an
exception to the court's ruling thereon.
The bill of exceptions contained in the
transcript of the record filed in this court
did not so show. Thereupon the origi-
nal bill of exceptions was, upon order made upon the
clerk of the trial court, sent to this court, so that the
facts concerning that feature of the record might be
ascertained. We have carefully examined the origi-
nal bill, and find that defendant did make offer of the
transcript of the testimony of witness McHugh given

*Criminal Law:
Witness out of
Jurisdiction:
Testimony at
Preliminary
Hearing:
Admissible on
Defendant's
Offer.*

before the committing magistrate at the preliminary hearing, and saved an exception to the court's ruling in excluding said testimony; so that we have squarely before us the following proposition: Is the transcript of the testimony of a witness given before the committing magistrate at the preliminary hearing on the same charge upon which the trial is later had, admissible in evidence when offered by the defendant, upon a showing that the witness is not within the jurisdiction of the court, the State having had the opportunity of cross-examining the witness, the subject-matter of the testimony being material to the issues involved, and no claim made that the absence of the witness is by any procurement or connivance of defendant? After a careful review of the authorities, we have come to the conclusion that the question must be answered in the affirmative.

Section 5056, Revised Statutes 1909, provides that in capital cases the defendant must be accorded the right of a preliminary examination before a magistrate, and under section 5033, Revised Statutes 1909, in homicide cases, the testimony of the witnesses must be reduced to writing. Section 5026, Revised Statutes 1909, provides that the witnesses produced at a preliminary hearing shall be examined on oath and in the presence of the prisoner. The statutes, however, do not expressly provide for the introduction or use of such testimony upon trial of the case. The English statutes, 1 and 2 Phil. & M., c. 13, sections 4, 5, and 2 and 3 Phil. & M., c. 10, enacted in the 16th century, were very similar to the present statutes of Missouri concerning examinations before committing magistrates. While the English statutes contained no direct provision for admitting the testimony thus taken, yet by general practice it became a common law usage that when the defendant was present at the preliminary examination, and had enjoyed the privilege of cross-examination, the Crown could in-

troduce such testimony at the trial, upon a showing that the witness was dead. [2 Wigmore on Ev., sec. 1364; 1 Bish. New Crim. Proc. (4 Ed.), secs. 1198 and 1201.] The growth of the rule with reference to the admissibility of testimony in that form is well stated in the following quotation from the opinion in the case of United States v. Macomb, 5 McLean, 1. c. 290:

"By the statutes of Philip and Mary, magistrates were directed and required to take the depositions of witnesses in certain criminal cases, and it has always been held, under these English statutes, that if the defendant were present at the taking of the deposition, and the witness were dead, it might be read on the trial as evidence. And yet there was nothing in the statutes from which it could be inferred that depositions were to be received as evidence. But the law having sanctioned them, it seems they became admissible upon general principles, provided the defendant was present, had the liberty to cross-examine, and the witness was dead."

The power to take depositions at common law in criminal cases did not exist, but where the deposition was taken pursuant to some statutory authority, the common law rule was that it was admissible as to form, notwithstanding there was no statutory authority for its admission. And the fact that present statutory enactments do not provide for the admission of every form of deposition (as, for example, testimony taken at a preliminary hearing) is not to be construed as changing or restricting the common law rule with reference thereto. The rules of common law on the subject remain in force unless expressly changed by statute. [2 Wigmore on Ev., sec. 1411.] This rule, allowing the State to use evidence of that character and in that form, was recognized at an early date in this State in the leading case of State v. McO'Blenis, 24 Mo. 402, when the testimony of a witness given be-

fore the committing magistrate, under statutes the same in effect as they exist today, was allowed to be introduced by the State, upon a showing that the witness was dead, and also in the face of the argument that the Constitution guaranteed to the defendant the right to be met face to face by the witness at the trial. The rule allowing the State to use such testimony only upon showing of death of the witness is evidently held within that restriction by reason of the constitutional requirement of allowing the accused a face-to-face meeting with the witness, which constitutional requirement was nothing more than a restatement of the common law of England. For, as was well stated by Judge LEONARD in the case of State v. McOBlenis, supra, "It may as well be the boast of an Englishman living under the common law, as of a citizen of this State living under our Constitution, that in a criminal prosecution he has a right to meet the witnesses against him face to face." And it was at a time when the common law made such guarantee to the accused that the rule was created whereby the Crown was permitted to introduce testimony of this character only upon showing the decease of the witness. While many States have enlarged the rule, and have permitted the prosecution to use testimony of this character in many instances when the witness is alive, yet the rule in this State as to the offer by the prosecution has remained as determined in the case of McO'-Blenis and by the case of State v. Houser, 26 Mo. 431. However, when the defendant makes offer of such testimony, and shows that the witness is not within the jurisdiction of the court, the constitutional guaranty of confrontation can be waived by him (State v. Wagner, 78 Mo. 644), and the evidence, otherwise material and competent, should be received. In the cases of State v. Riddle, 179 Mo. 297, and State v. Rose, 92 Mo. 201, the right of the defendant to have testimony in this form admitted is not doubted, and is by infer-

ence sanctioned, this court holding in those cases that the defendant did not make showing sufficient to come within the rule.

The Supreme Court of California, in the case of People v. Bird, 132 Cal. l. c. 264, after discussing the limitations interposed against the State in offering evidence of this kind, very clearly states the rule with reference to the rights of the defendant as follows:

"But, upon the other hand, there is in this no restriction upon the rights of a defendant. The rule as to him is the same as it was before the adoption of the codes, and as it stood at common law. He may waive his right of confrontation, if he so desires, and introduce in evidence the testimony of such dead or absent witnesses, whether that testimony was given at the preliminary examination or upon a former trial of the cause."

The transcript offered showed that witness McHugh testified that he heard the deceased make the threat to defendant on the Saturday evening preceding the killing, which occurred on Sunday. This testimony corroborated that of defendant on that point. Mrs. Walsh contradicted defendant's testimony in that regard. Both Mrs. Walsh and defendant were interested witnesses. McHugh, so far as the record shows, was disinterested, and defendant was entitled to have the jury consider his testimony concerning the former threat, the showing of threats being very material to the defense interposed, and it was error to refuse it.

II. Defendant next complains of the action of the court in not instructing on manslaughter in the fourth degree. A careful review of the evidence fails to disclose any provocation sufficient in law to reduce the offense from murder to manslaughter. The evidence on the part of the State tended to prove murder in the first or second degree,

*Instructions.*

and that upon the part of the defense, justifiable homicide committed in self-defense. The court properly refused to so instruct. [Wharton on Homicide (3 Ed.), sec. 172.]

III. Defendant next contends that the court committed error in refusing certain instructions requested by defendant. Refused instruction 3 is as follows:

Letters Not in Evidence.

"No. 3. The court instructs the jury that the fact, if it be a fact, that the defendant wrote a letter to the witness, Frazer, which was of such a character as to offend the deceased, or other members of the Walsh family, and the fact, if it be a fact, that during the conversation in the Walsh yard, on Sunday, the defendant stated that the statements contained in said letter were true, did not authorize or warrant Eugene Walsh or any one there present to attack, assault, or attempt to attack or assault the defendant, and in passing upon the guilt or innocence of the defendant in this case it is wholly immaterial whether defendant wrote a letter to Frazer or not, and it is also immaterial whether the statements contained in said letter were true or false, or that defendant asserted they were true. There is no evidence before you as to what said letter contained, and the letter and its contents do not in any way affect the guilt or innocence of the defendant in this case."

Reference to such letter necessarily occurred upon the trial, in relating the conversation that took place at or near the time of the killing. Defendant contends that the State's attorney construed the letter and its suggested contents as a sort of moral justification of the attack made on defendant by the deceased, and that an effective slogan of the State was, "Poor Gene Walsh had a right to defend his sister's honor." If such remark was made by counsel for the State (which does not appear in the record), the de-

fendant, by proper and timely objection and exception, could have protected his rights, but nothing of the kind appearing in the record, the matter is not before this court for review. Defendant was not entitled to an instruction in the above form, but under the circumstances of the case, and owing to the fact that the jury might give undue importance to the letter and its suggested contents, the defendant was entitled to have the court, by instruction, call the attention of the jury to the fact that the letter was not in evidence, and that the jury should not consider the letter, or any of its suggested contents, in passing upon the guilt or innocence of the defendant.

The remaining instructions offered by defendant and refused by the court relate to the questions of self-defense, threats and defendant's apprehension of danger; but in so far as said instructions contain proper declarations of law applicable to the case, the same were fully covered by the instructions given by the court, and such refusal was therefore not error. [State v. Maupin, 196 Mo. 164.]

Points Covered by Other Instructions.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.