THE STATE v. JOSH HARP, Appellant.—6 S. W. (2d) 562.

Court en Banc, May 18, 1928.

(1)

*T. R. R. Ely, M. E. Dunneway* and *Wammack, Welborn & Cooper* for appellant.

*North T. Gentry*, Attorney-General, and *Claud Curtis*, Special Assistant Attorney-General, for respondent.

4

HIGBEE, C.—An information was filed in the Circuit Court of Dunklin County on May 5, 1922, charging the appellant with murder in the first degree in that he, on April 5, 1922, deliberately, etc., shot and killed Irving Spinks. The venue was changed to Stoddard County where the cause was tried to a jury, resulting in a verdict finding the defendant guilty of murder in the second degree, and assessing his punishment at imprisonment in the penitentiary for a term of twenty years. On appeal the conviction was reversed for failure of the trial court to instruct on manslaughter, and the cause was remanded. [State v. Harp, 306 Mo. 428, 267 S. W. 845.] On a retrial of the cause on November 19, 1926, he was found guilty of manslaughter and his punishment assessed at imprisonment in the penitentiary for a term of five years and he again appealed.

The evidence on the second trial was substantially the same as on the first trial On the first appeal the evidence was clearly summarized in the opinion written by Judge RAILEY, and as no point is made by the appellant on the sufficiency of the evidence it need not be restated.

I. On November 16, 1926, the defendant filed a motion for his discharge under the provisions of Section 4041, Revised Statutes 1919, because the State had failed to bring the case to trial before the end of the third term of the Circuit Court of Stoddard County after the transcript of the record in the cause had been filed in the office of the clerk of the circuit court of said county, which was on September 13, 1922.

Two terms of the Circuit Court of Stoddard County are held each year, beginning on the second Mondays of March and September. The case was docketed for trial on October 12, 1922, during the September term, and continued to the next term of court on the application of the State. At the March term, 1923, the defendant was tried, found guilty and appealed as heretofore stated. The mandate of this court, reversing and remanding the cause for new trial, was filed in the office of the clerk of the circuit court on January 28, 1925, and, as appellant's learned counsel say, thereafter said cause stood for trial in said court as if no conviction had ever been had therein. At the succeeding March term, the cause was continued by agreement of the parties on the application of the State on account of absent witnesses. At the September term, 1925, and also at the March term, 1926, the cause was continued on the application of the State on account of the absence of witnesses. The defendant was out on bail and at all times was ready for trial. The motion to discharge was overruled. Appellant insists this was error. Section 4041, Revised Statutes 1919, reads:

"If any person indicted for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term."

We are not concerned about the continuance at the September term, 1922. If the defendant was entitled to be discharged it was on account of the laches of the State in failing to bring the cause to trial after the reversal. The first of the three continuances after the reversal at the March term, 1925, was by agreement. Appellant cannot blow hot and cold; he cannot except to a continuance made with his consent, nor make it the basis of a motion for his discharge under the statute. "The consent of the accused will toll the statute." [State v. Nelson, 279 S. W. 401, 403.]

II. The defendant assigns as error that "the use by the State of the testimony of the witness Ben Mercer taken at the former trial and preserved in the bill of exceptions, the witness being outside of the State, violated the defendant's right under the Constitution of Missouri to meet the witnesses against him face to face."

Irving Spinks and Ben Mercer were non-residents of Missouri and had "bummed" their way on freight trains from Kentucky. They were discovered and put off a freight train at Malden, in Dunklin

County, by the defendant, who was a special officer of the railroad company. Thereupon the defendant became engaged in an encounter with Spinks and shot and killed him. Mercer witnessed the homicide and testified as a witness for the State at the first trial. The three continuances were ordered on account of his absence from the State.

It appears from the terms of the assignment of error, as also from the bill of exceptions, that Mercer's evidence at the first trial had been preserved in the bill of exceptions and that he was out of the State at the time of the second trial. It was shown by the prosecuting attorney, and not questioned by the defense, that he and the sheriff had diligently, but unavailingly, endeavored to locate Mercer and that a few days before the second trial they found Mercer's name on a waiting list of applicants for work in a mine at Herrin, Illinois, but were unable to find him, and that they believed Mercer was still alive. On this showing the defendant objected to the prosecution reading to the jury the evidence of Ben Mercer as preserved in the bill of exceptions, for the reason above mentioned.

In State v. McO'Blenis, 24 Mo. 402, in an exceptionally able opinion by Judge LEONARD (Judge RYLAND dissenting) it was held that a deposition taken upon the preliminary hearing before a committing magistrate in the presence of the accused may be received in evidence on the trial upon proof of the death of such witness, and that the provision of the Constitution of this State declaring ''that in all criminal prosecutions the accused has the right to meet the witnesses against him face to face'' does not render such evidence illegal. [See also State v. Barnes, 274 Mo. 625, 204 S. W. 627.]

In State v. Houser, 26 Mo. 431, it was held in an opinion by Judge NAPTON that the deposition of a witness taken upon the preliminary examination before a committing magistrate, in the presence of the accused, was not admissible in evidence on the trial upon proof that the witness was beyond the jurisdiction of the court. If, however, the absence of the witness at the trial was procured by the defendant, the deposition would be admissible in evidence. In the course of the opinion, page 436, Judge NAPTON said: ''But we find further, that not only is there no authority in England which excludes the testimony of a deceased witness, under the circumstances accruing in the case of McO'Blenis, but *none is to be found in this country.*''

On page 437: ''The admission of dying declarations, as they are termed, seems to occupy precisely the same ground as that of the deposition of the deceased witness. If the Constitution excludes the one it must exclude the other. To say that the witness who must meet the accused 'face to face' is he who repeats what the dying man said, is a mere evasion; and if the Constitution admits of this evasive interpretation in relation to the dying declarations, it is just as easy

to apply the same rule of construction to the deposition of the dead witness.''

On page 438: ''The admissibility of dying declarations has not been questioned. They have been frequently resorted to in this case, as well as elsewhere, without any suggestion ever having been made of conflict with the constitutional provision. To exclude them on this ground would not only be contrary to all the precedents in England and here, acquiesced in long since the adoption of these constitutional provisions, but it would be abhorrent to that sense of justice and regard for individual security and public safety which its exclusion in some cases would inevitably set at naught. But dying declarations, made under certain circumstances, were admissible at common law, and that common law was not repudiated by our Constitution in the clause referred to, but adopted and cherished. The deposition of the deceased witness was also permitted at common law; and the same rule of interpretation which allows the former under the Constitution will admit the latter.''

On page 439: ''The point made in this case we do not, however, consider determined by the case of McO'Blenis. It may be that, so far as the constitutional provision referred to is considered, the reason for admitting the deposition is just as conclusive in the one case as in the other. *If the witness is beyond reach of process, his presence is as utterly unattainable as though he were dead.*'' (Our italics.)

Yet the learned jurist held that the deposition of the witness upon the preliminary examination in the presence of the accused was inadmissible at the trial upon proof that the witness was beyond the jurisdiction of the court although he had just stated, what is obviously indisputable, that ''if the witness is beyond the reach of process, his presence is as utterly unattainable as though he were dead.''

Again, on page 440: ''In Buller's N. P. 242, it is said that 'if the witnesses examined on a coroner's inquest be dead, *or beyond sea,* their depositions may be read, for the coroner is an officer appointed on behalf of the public to make inquiry about the matters within his jurisdiction.' . . . In Rex v. Huyon, 8 Carr. & P. 167, a deposition was offered, the witness being beyond seas, and COLTMAN, J., said it was inadmissible *unless by consent.* In this country the decisions have been the same way. In Beebe v. The People, 5 Hill, 32, absence from the State was held not to warrant the admission of the deposition. In Tharp v. State, 15 Ala. 746, the same doctrine was asserted. Upon principles of public policy the admission of such depositions, in the mere absence of the witness, is extremely questionable, so that both principle and precedent concur in excluding them. If the absence of the witness was procured by the prisoner the rule would be different.''

Judge NAPTON based his conclusions upon prior English and American decisions. It appears that a deposition taken at a coroner's inquest was held to be admissible if the witness was beyond seas, because "some peculiar importance was attached to the proceedings of this officer." [P. 440.] Certainly no greater dignity or importance can attach to the office of an English coroner than belongs to our circuit court, a court created by our Constitution and clothed with original and general jurisdiction, and proceeding in the exercise of its jurisdiction in the trial of a criminal cause. On what principle of justice or of public policy then, in the circumstances of this case, can the evidence of the witness Mercer, preserved in the bill of exceptions, be excluded?

In 6 Ruling Case Law, 53, it is said: "An important canon of construction is that constitutions must be construed with reference to common law. . . . It has been said that without reference to this common law the language of the Federal Constitution could not be understood. This is due to the fact that this instrument and the plan of government of the United States were founded on the common law as established in England at the time of the Revolution. Phrases in the Bill of Rights taken from the common law therefore must be construed in reference to the latter."

Since we have adopted the common law in Missouri this rule of construction is applicable in interpreting our Constitution.

At page 246 of the same volume, referring to the first ten amendments to the Federal Constitution, it is said: "It is well settled that these ten amendments, commonly known as the Bill of Rights, were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had from time immemorial been subject to certain well recognized exceptions, arising from the necessities of the case. In corporating these principles into the fundamental law there was no intention of disregarding such ex ceptions, but instead they have been recognized as if they had been formally expressed in the text of the amendments."

The application of this principle to the question in hand is considered in 8 Ruling Case Law, 88, where it is said: "The admission of evidence given on a former trial or in a prior stage of the same proceeding, where the issue and the parties are the same in both instances—another exception to the rule against hearsay—was at one time thought, in some jurisdictions, to be an infringement of the defendant's constitutional right; but this is not the view usually taken at the present time. The confrontation of the witness at the former trial, if the defendant had the opportunity to cross-examine, is sufficient compliance with the constitutional requirement, and the testi-

mony thus given may be used at the trial, provided the witness is not legally available. . . . Among the circumstances in which the rules of evidence allow this testimony is the absence from the jurisdiction of the witness who previously testified, and this is true although the prosecution may have neglected an opportunity to subpoena him before he left the jurisdiction.''

In State v. Brown, 285 S. W. 995, we quoted approvingly to the same effect from 16 Corpus Juris 839, Section 2116, where a great array of cases are cited in support of the text. [See, also, State v. Nelson, 68 Kan. 566, and State v. Heffernan (S. D.), 118 N. W. 1027, 25 L. R. A. (N. S.) 868, and annotations.]

The witness Mercer was out of the State, beyond the reach of process. To all intents and purposes his presence at the trial was as unattainable as if he were dead. The appellant was confronted with the witness at the former trial and cross-examined him. The Constitution must be reasonably construed. This meeting of the witness face to face conforms to the requirements of the Bill of Rights in this respect. If the evidence as preserved in the bill of exceptions was admissible in the one case, as seems to be the general rule, we can see no reason why it should be excluded in the other. There was no error in admitting the evidence of the witness at the former trial. The ruling in State v. Houser, supra, should no longer be followed.

III. During the examination of the jury on their *voir dire* the prosecuting attorney inquired if they would give to the testimony of a witness offered on a former trial of the case and preserved in the bill of exceptions the same weight they would give to the testimony of such witness if he were present and testifying before them. Each juror answered that he would. The defendant objected to the inquiry as not being a proper question; that the State has no right to bind a juror or to inquire of him how he will consider any testimony in so far as relates to its credibility, and for the reason it tends to give undue prominence and particularity and to unduly point out this particular evidence. The objection was overruled. In support of this contention learned counsel cite cases condemning instructions which single out or comment on the evidence.

It is generally believed that the deposition of an absent witness is not given the consideration that is accorded to the testimony orally delivered by the witness in the presence of the jury. The purpose of the prosecuting attorney in making the inquiry may have been to enable him to make his challenges. We are unable to say there was any prejudicial error in the ruling of the court.

This disposes of all the assignments of error referred to in appellant's brief. The appellant had the benefit of able counsel; he had a

fair trial and the judgment is affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of Court en Banc. All of the judges concur, except *Graves, J.,* who dissents.