THE STATE v. TERRY LLOYD, Appellant.—87 S. W. (2d) 418.

Division Two, November 5, 1935.

*Claude F. Cooper, E. E. Alexander, McKay & Peal* and *T. J. Crowder* for appellant.

*Roy McKittrick,* Attorney General, and *W. W. Barnes,* Assistant Attorney General, for respondent.

BOHLING, C.—Terry Lloyd was convicted in the Circuit Court of Pemiscot County for the murder in the second degree of Will Copeland, and appeals from the judgment and sentence imposing a punishment of ten years' imprisonment in accord with the verdict.

Will Copeland was the step-father of Terry Lloyd. They lived in Blytheville, Arkansas. From the evidence it appears that appellant, two of his sisters, Lonnie Boston and J. M. McDaniel left Memphis about six P. M., July 4, 1933, for the home of the younger sister in Blytheville in McDaniel's automobile. There was some evidence to the effect that deceased had assaulted appellant's younger sister, a girl of thirteen years. Arriving at Blytheville, they let the girls out at the home, and started back to Memphis. Will Copeland was seen standing on a street corner in Blytheville, and appellant, who was driving, stopped the car, got out, and, after talking to Copeland, appellant and Copeland entered the automobile. They then drove some distance out of Blytheville, across the state line and into Pemiscot County, Missouri. Appellant, stopping the car, went around to where Copeland was riding and, addressing him, said: "Doc, get out." Copeland got out of the car and appellant told him what he had done to his sister and said he was going to whip him. Thereupon, a fight ensued between appellant and deceased, some of the testimony, contradicted by appellant, being that appellant first struck and knocked deceased down. The combatants fought "all over the road and down into the ditch," and into some unfenced cotton rows adjacent to the highway. When the fight was over deceased ran into the cotton patch, and appellant and his companions turned around and returned to Memphis. The fight was of short duration. Appellant's evidence was that it was a fist fight. Deceased was found about the noon hour of July 5, 1933, about 150 yards from the highway in the cotton patch, and about three-fourths of a mile north of the Missouri-Arkansas state line at a point where the dirt had been stirred up as if there had been a struggle. Deceased had received injuries on his head and body and was unconscious. He died the following July 19th at the hospital in Blytheville. The attending physician testified that the cause of death was a concussion of the brain brought on by a wound received on the left forehead, sunburns and nephritis; that the sunburns could have resulted from exposure to the sun for from three to four hours under conditions existing on July 5, 1933; and that the nephritis was secondary and could have resulted from the sunburns.

The State offered in evidence the transcripts of the testimony of Dr. W. A. Grimmett and Arch Lindsay taken at the preliminary hearing. Appellant asserts error in the admission of the transcripts; because: (a) the witnesses had not signed the transcript of their respective testimony; (b) the transcripts were not certified to, and

(c) there was no showing made of any effort on the part of the State to. have the witnesses in court.

From the justice's transcript of the preliminary hearing, it appears that the affidavit for a State warrant charged appellant and his companions, McDaniel and Boston, with the offense. During the course of the preliminary, the State dismissed the charges as to McDaniel and Boston; and, according to the evidence adduced in connection with the offer of the transcript, at the close of the preliminary hearing, after some discussion, as some of the witnesses lived outside the State, it was agreed that the signatures of both the State's and appellant's witnesses were waived by the State and the appellant. Section 3480, Revised Statutes 1929 (Mo. Stat. Ann., p. 3115), provides "In all cases of homicide, but in no other, the evidence given by the several witnesses shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively." The transcript of the testimony of witnesses Grimmett and Lindsay was not signed. If the signatures were not waived, the transcripts were inadmissible [State v. Bradford, 324 Mo. 695, 700(1), 24 S. W. (2d) 993, 994(1)]. However, we have repeatedly held a defendant may waive his statutory rights. For instance, he may waive his right to a preliminary hearing [State v. Miller, 331 Mo. 675, 678(1), 56 S. W. (2d) 92, 94(1); State v. Ferguson, 278 Mo. 119, 129(2), 212 S. W. 339, 341(3), where a plea of not guilty in a murder case was held to waive the requirements that the evidence at the preliminary hearing be reduced to writing, signed by the witnesses certified by the magistrate, and delivered to the clerk of the court having cognizance of the offense]; or his constitutional right [Mo. Const., Art. 2, Sec. 22] "to meet the witnesses against him face to face" [State v. Wagner, 78 Mo. 644, 648, holding, where accused insisted on trial upon the State seeking a continuance on account of the absence of witnesses, his consent to the reading of a written statement of the absent witnesses to the jury waived this constitutional right; State v. Williford, 111 Mo. App. 668, 671, 86 S. W. 570, 572, and cases infra.] The signing of the transcript of his testimony by a witness is but an incident to the preliminary hearing. The signature or lack of one does not go to the merits of the preliminary or the trial, or affect the truth of the testimony thus adduced. Undoubtedly, appellant and the State had the right to waive this statutory provision.

An examination of the record discloses that the transcript of the proceedings at the preliminary hearing were certified as true and correct by the justice of the peace. Appellant's contention that it was not certified is without merit.

Appellant contends the transcripts of the testimony of the witnesses was inadmissible because there was no showing that the State made any effort to have the witnesses in court. The only evidence adduced

on this phase of the issue was testimony establishing the residence of the witnesses in Blytheville, Arkansas. No occasion exists to review the authorities holding a transcript of testimony given at a prior hearing (at the preliminary or at the trial on the merits) is admissible, the accused being present at the hearing and afforded the right of examination or cross-examination, when it is shown that the witness has since died [State v. McO'Blenis, 24 Mo. 402, 69 Am. Dec. 435; State v. Barnes, 274 Mo. 625, 629, 204 S. W. 267, 268(2)]; or has become insane [State v. Pierson, 337 Mo. 475, 85 S. W. (2d) 48, 53(5)]; or is without the State [State v. Butler, 247 Mo. 685, 694, 153 S. W. 1042, 1044(1); State v. Harp, 320 Mo. 1, 5(2), 6 S. W. (2d) 562, 563(2); and see State v. Bradford, 324 Mo. 695, 700(1), 24 S. W. (2d) 993, 994(1)]. The authorities are reviewed in the cases mentioned. In State v. Houser, 26 Mo. 431, the principal question was "whether the deposition of a witness taken before the examining court can be used against the prisoner on his trial, it appearing that the witness is beyond the jurisdiction of the court" (1. c. 433); the court holding: "Upon principles of public policy the admission of such depositions, in the mere absence of the witnesses, is extremely questionable, so that both principle and precedent concur in excluding them. If the absence of the witness was procured by the prisoner the rule would be different." (1. c. 440.) In State v. Harp, 320 Mo. 1, 5(2), 6 S. W. (2d) 562, 563(2), the court considered the admissibility of the testimony of one Mercer for the State preserved in the bill of exceptions of a former trial, he having departed the jurisdiction of the State. The court, after specifically stating diligent, but unavailing, efforts had been made to locate Mercer, continued: "The witness Mercer was out of the State, beyond the reach of process. To all intents and purposes his presence at the trial was as unattainable as if he were dead;" and, . holding the transcript of the testimony admissible, stated State v. Houser, supra, should no longer be followed. The Harp case does not discuss the obligation, if any, of the State to show diligence in an effort to secure the presence of the witness, diligence having been shown. Viewing the Houser case in the light of the precise issue there presented and ruled, what the court there said *arguendo* or by way of *dictum* does not possess the status of an issue adjudicated. The court was considering a case where the showing to justify the admission of the transcript was "the mere absence of the witness." Nor should the expression in the Houser case that the rule would be different if the absence of the witness was procured by the accused be taken as embracing all exceptions to the rule there announced. We think the two decisions are not necessarily in conflict. In State v. Butler, supra, the transcript of a witness' testimony at the preliminary was held admissible on behalf of the accused upon a showing he was not within the jurisdiction of the court. We find

no discussion of the necessity for any additional predicate to the admission of such a transcript. An accused possesses a constitutional privilege to meet the witnesses against him face to face, which should be accorded in all instances except when its denial is justified to prevent a miscarriage of justice.

A difference (possibly justifying a distinction, which we do not rule) exists between the transcript of a witness' testimony given upon a preliminary hearing and that given at the trial upon the merits. The preliminary is usually held within a short time after the apprehension of the accused and often without opportunity for a full preparation upon the merits. The inquiry is directed to ascertaining whether or not a felony has been committed and whether or not there is probable cause to believe the accused guilty thereof. It does not contemplate the establishment or refutation of the guilt of the accused beyond a reasonable doubt as is the ultimate fact issue at the trial on the merits, and for which counsel has had ample opportunity to prepare. The triers of the facts, present only at the trial on the merits, determine the weight and credibility of the evidence from, among other factors, the expressions, the appearance and demeanor of the witness on the stand, which is not to be had from the written transcript of the preliminary. A complete and exhaustive cross-examination, after proper preparation, often has its effect on a jury.

The best evidence is the *viva voce* examination of the witness in the presence of the accused, the court and jury. The transcript of his former testimony is secondary evidence; admissible, under certain conditions, on the ground that the advantage afforded an accused through meeting the witnesses against him face to face must yield to the rights of the public arising from the necessities of the case to prevent the defeat of a fair trial. In the instant case the witnesses lived at Blytheville, Arkansas, at the time of the preliminary as well as at the time of the trial. So far as this record shows, they willingly appeared and testified at the preliminary. They were not residents of the State who departed therefrom after testifying at the preliminary. The record fails to disclose that the magistrate bound, by recognizance, the witnesses to appear and testify before the court having cognizance of the offense. [Sec. 3483, R. S. 1929, Mo. Stat. Ann., p. 3116.] While such recognizance might have been effective in the instant case, the issue turns on the necessity for showing diligent effort to secure the presence of the witness at the trial on the merits. Although Blytheville is near the place of trial, this record fails to show the issuance of a subpoena in an effort to obtain service upon the witnesses should they have been found in the county, or any search or effort at any time to locate them in the county. Notwithstanding residence and citizenship at Blytheville, had the witnesses been present in court on the

occasion in question, the transcript of their testimony at the preliminary would have been inadmissible [State v. Coleman, 199 Mo. 112, 118(2), 97 S. W. 574, 577(8)]. There was no showing that their presence was unobtainable or that they were unwilling to give their testimony in person. It does not follow from residence outside the State that the attendance of a witness at the trial is unattainable. He may not only consent but actually desire to be present.

Some effort to produce the best evidence is required of a litigant in civil cases to justify the admission of secondary evidence; and we have required the exercise of diligence on the part of a defendant to locate a witness supposed to be within the State as a condition precedent to the admission of a transcript of the witness' evidence at the trial on the merits. [State v. Riddle, 179 Mo. 287, 297, 78 S. W. 606, 608.] In view of the constitutional provisions protecting an accused, we hold, that upon proper objection presenting the issue, it is incumbent on the State to show, among other things, the exercise of reasonable diligence to secure the attendance of a witness at the trial upon the merits as a predicate to the admission of the transcript of the testimony of said witness given at the preliminary hearing (the witness residing outside the State at the time of the preliminary and also trial), where the admissibility of such transcript is sought on the ground said witness is not within the jurisdiction of the court. [See *arguendo* State v. Pierson, 337 Mo. 475, 85 S. W. (2d) 48, 53(6); and see Annotations 79 A. L. R. 1392, 1404 et seq.; 15 A. L. R. 495, 527 et seq.] What constitutes due diligence may well turn on the facts of the particular case. Under ordinary circumstances if it be shown that a witness is inaccessible after reasonable effort to locate him, or being located, he refuses or is unwilling to attend and give testimony, his former testimony should become admissible. Such a showing casts no great burden on the State.

■ Appellant attacks the instructions submitting the case on second degree murder and manslaughter on common grounds, insofar as set forth with particularity, to-wit: that they submitted the issue of the use of a dangerous weapon which was unsupported by any charge in the information or evidence in the record.

As the use of a dangerous weapon is not a constitutive element of homicide under the statutory provisions, it was not necessary to allege that the weapon used was dangerous. [Secs. 3982, 3983, 3988, Mo. Stat. Ann., pp. 2778, 2786, 2793; State v. Beard, 334 Mo. 909, 912(1), 68 S. W. (2d) 698, 700(1); State v. Myers, 198 Mo. 225, 258(7), 94 S. W. 242, 253(7).]

Concerning the injury over deceased's left eye, which was a contributing cause of death, Dr. Grimmett testified (the only testimony in the record on the issue) a traumatic condition existed, inflamed, bruised and lacerated; "I hardly believe a fist would do it. Falling

against something or hitting something there;'' that it could have been made with the heel of a shoe stomping on the forehead. Appellant's evidence established the use of the fist only and that during the fight deceased fell against the automobile. Dr. Grimmett, while of the belief a fist likely did not cause the wound, does not testify that the injury was the result of the use of a weapon, nor does he negative appellant's evidence that it might have resulted from a fall against the automobile. Under his testimony, a finding that the wound on the forehead was the result of a fall against something would have been as consistent as a finding that it resulted from the use of a weapon (dangerous or otherwise) by appellant. We think the use of a dangerous weapon by appellant should rest upon more substantial evidence. [See State v. Jones, 71 Mo. 591; State v. Kauffman, 329 Mo. 813, 825(3), 46 S. W. (2d) 843, 848(8).]

██ Appellant's offer to prove that he had acquired information his younger sister had been ravished by deceased as showing appellant acted under such heat of passion as to reduce the homicide to manslaughter was properly overruled. From other evidence in the case this information was imparted to appellant at Memphis. After that he took his sister to her home in Blytheville. He then started to return to Memphis. He was not seeking deceased. Seeing deceased on a street corner, appellant did not attack him but invited him to get in the automobile, and then drove out into the country a distance before asking deceased out of the car for the purpose of attacking him. These acts do not disclose a passion beyond control, disturbing and obscuring the powers of reflection, reason and judgment, and a mind incapable of deliberation or entertaining malice. [State v. Clough, 327 Mo. 700, 704, 38 S. W. (2d) 36, 38(1), and cases there cited; State v. France, 76 Mo. 681, 685; State v. Holme, 54 Mo. 153, 165; 13 R. C. L., p. 794, sec. 98.]

██ Appellant's motion for new trial asserts the information fails to charge any offense; fails to charge that the wounds and injuries were mortal; fails to charge any striking of deceased by defendant; and fails to charge that the wounds and injuries were inflicted feloniously, willfully, deliberately, premeditatedly, on purpose and of malice aforethought. While we do not commend the information as a model of good pleading, it is adapted from the information in State v. Poor, 286 Mo. 644, 654, 228 S. W. 810 813(1), which was held to charge the crime of murder in the first degree. We suggest, however, that the information might well be amended to eliminate the above, as well as possibly other, contentions. [State v. Hyland, 144 Mo. 302, 46 S. W. 195; State v. John, 172 Mo. 220, 72 S. W. 525; State v. Kloss, 117 Mo. 591, 23 S. W. 780; and see State v. Myers, 198 Mo. 225, 258(7), 94 S. W. 242, 253(7), and cases cited.]

The alleged error in overruling appellant's demurrer at the close of the evidence is without merit. In addition to the possibility of

the State strengthening its case on a retrial, one may commit murder by means of an attack with the fists or feet. [See the Hyland, John and Kloss cases, supra.]

■ The court excluded an offer to prove by appellant what was said at the scene of the offense, evidently on the ground the offered testimony was self-serving. What was said at the time of the commission of the offense tending to explain the actions of appellant and deceased, as well as the acts of appellant and deceased, should be admitted as part of the *res gestae*. [State v. Stallings, 334 Mo. 1, 6(4), 64 S. W. (2d) 643, 644(6); State v. Schenk, 238 Mo. 429, 456, 142 S. W. 363; State v. Hoffman, 78 Mo. 256, 257.]

The occasion for other alleged errors (whether or not sufficiently preserved for review here) recurring may be so readily eliminated we deem it unnecessary to mention them.

The judgment is reversed and the cause remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.