STATE of Missouri, Plaintiff-Respondent,

v.

Terry Dennis DREILING, Defendant-Appellant.

No. 11324.

Missouri Court of Appeals, Southern District, Division Two.

June 26, 1980.

John D. Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles E. Buchanan, Asst. Public Defender, Joplin, for defendant-appellant.

BILLINGS, Presiding Judge.

The pivotal issue in defendant's appeal of his felonious stealing conviction is the State's use of preliminary hearing testimony of an absent witness at the trial of the defendant. We reverse and remand for a new trial.

The alleged offense occurred in Jasper County on April 10, 1978. A preliminary hearing for defendant and two codefendants was held on May 11, 1978. Bernie Rose Jeffcoat testified for the State under an agreement that no charges would be lodged against her for her alleged participation in the crime. Her testimony was the only evidence linking the defendant to the alleged theft of monies from a service station cash register. The public defender, representing the three named defendants, cross-examined Jeffcoat. An information against defendant was filed May 23, 1978.[1]

The defendant's trial was apparently scheduled for January 31, 1979, but continued to February 1, 1979. On January 29, 1979, the prosecuting attorney requested that a subpoena be issued to Jasper County authorities for Jeffcoat. The prosecuting attorney explained he requested the subpoena "primarily as a formality on my part to show that I had issued a subpoena, period . . . ." On the same date the prosecutor notified the public defender that the State intended to use Jeffcoat's preliminary hearing testimony. By formal motion and voiced objections the public defender sought to bar the use of Jeffcoat's earlier testimony, contending, inter alia, the State had not exercised due diligence in subpoenaing Jeffcoat and that the use of the prior testimony would run afoul of the Constitutional provisions guaranteeing a defendant's rights of confrontation and cross-examination.

Immediately before trial the court conducted a hearing on the "unavailability" of Jeffcoat and the State's efforts to subpoena this witness. The only *evidence* on this question came from the testimony of Deputy Sheriff York of Jasper County.[2] The deputy knew Jeffcoat and her parents, and in fact lived next door to them in Jasper, Missouri. He stated that when a subpoena

---

1. An amended information alleging defendant was subject to the Second Offender Act was filed on the day of trial, February 1, 1979.

2. Colloquy between the trial judge, prosecuting attorney, and public defender indicates that at an earlier trial date, December 18, 1978, contin-

ued at the request of the defendant, a subpoena had been issued for Jeffcoat and directed to Jasper County. This subpoena had been returned by Deputy York stating she could not be found in that county and was believed to be living in Kansas City.

had been issued for Jeffcoat in December he had telephoned the girl's mother and had been advised the daughter was then living in Kansas City but that the mother did not know her address. A week or so before defendant's trial the prosecuting attorney asked the deputy to check on the witness and the deputy, again by telephone, contacted the witness' mother. The mother said she had seen her daughter one time since the deputy's earlier inquiry but that she still did not know where her daughter was living. The deputy admitted he had not made any inquiries as to Jeffcoat's whereabouts of other members of her family or of her acquaintances in Jasper, Missouri. There was no evidence any effort was made to serve the January 29 subpoena and if it was returned, the record fails to reflect such. No subpoena was directed to Jackson County authorities and no effort was made to attempt to locate Jeffcoat in the Kansas City area.

Based upon the foregoing, the trial court found the State had made diligent efforts to subpoena Jeffcoat, ruled that this witness was unavailable, and the State could use her preliminary hearing testimony. A "transcript" of this testimony was prepared from a tape recording and was admitted as a part of the State's case.

■ The general rule is that testimony given by a witness at a former trial or at a preliminary examination is not admissible at a subsequent trial in the absence of some adequate justification and proper predication therefor, or an agreement of counsel. 23 C.J.S. Criminal Law §§ 892–896, pp. 506–525. The conditions under which such evidence is admissible as substantive evidence are that such an examination or trial was had in a judicial tribunal; that the witness was sworn and testified; that the accused was present and had an opportunity for

cross-examination; that the parties and issues were substantially the same as in the case on trial; and, the witness has since died [*Garret v. State*, 6 Mo. 1 (1839)], become insane [*State v. Pierson*, 337 Mo. 475, 85 S.W.2d 48 (1935)], left the state permanently or for an indefinite time [*State v. Williamson*, 343 Mo. 732, 123 S.W.2d 42 (1938)],[3] is unable to attend and testify on account of sickness or physical disability, or after due diligence cannot be found [*State v. Purl*, 183 S.W.2d 903 (Mo.1944)].[4] Another recognized exception is where a witness who has testified at a previous trial or at a preliminary examination invokes the privilege against self-incrimination and becomes "unavailable." *State v. Holt*, 592 S.W.2d 759 (Mo. banc 1980).

■ We cannot agree that two telephone calls to Jeffcoat's mother over a space of approximately six weeks and the request for a subpoena for the witness on the eve of trial, as a "formality", constitutes a good-faith effort or amounts to diligence on the part of the State. "Greater diligence should be exercised with respect to a witness who was a resident at the time of testifying for the admissibility of the former testimony for the purpose of establishing the facts therein asserted as true." *State v. Gallina*, 352 Mo. 557, 560, 178 S.W.2d 433, 434 (1944). No inquiry as to the girl's whereabouts was directed to her father, sister, brother, or friends and acquaintances.

In discussing the State's obligation to produce its witnesses at trial, rather than utilizing preliminary hearing testimony, Commissioner Bohling[5] wrote in *State v. Lloyd*, 337 Mo. 990, 87 S.W.2d 418 (1935), at 421:

---

**3.** But see *State v. Brookins*, 478 S.W.2d 372 (Mo.1972), quoting at length from *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), and reversing a Missouri conviction where the deposition of a witness was used and the State had made no attempt to return the witness to Missouri for defendant's trial.

**4.** Other cases considering the "diligence" question are: *State v. Deyo*, 358 S.W.2d 816 (Mo. 1962); *State v. Kain*, 330 S.W.2d 842 (Mo. 1960); *State v. Gallina*, 352 Mo. 557, 178 S.W.2d 433 (1944); *State v. Lloyd*, 337 Mo. 990, 87 S.W.2d 418 (1935).

**5.** Commissioner Bohling also authored the opinions in *Deyo, Kain* and *Gallina*, note 4.

"The preliminary is usually held within a short time after the apprehension of the accused and often without opportunity for a full preparation upon the merits. The inquiry is directed to ascertaining whether or not a felony has been committed and whether or not there is probable cause to believe the accused guilty thereof. It does not contemplate the establishment or refutation of the guilt of the accused beyond a reasonable doubt as is the ultimate fact issue at the trial on the merits, and for which counsel has had ample opportunity to prepare. The triers of the facts, present only at trial on the merits, determine the weight and credibility of the evidence from, among other factors, *the expressions, the appearance, and demeanor of the witness on the stand*, which is not to be had from the written transcript of the preliminary. A complete and exhaustive cross-examination, after proper preparation, often has its effect on the jury." (Our emphasis).

In *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, the United States Supreme Court reminded that in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), it had stated "The primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or *ex parte* affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 390 U.S. at 721, 88 S.Ct. at 1320.

We find from the record before us that witness Jeffcoat was not unavailable for purposes of the noted exception to the confrontation requirement because we do not believe the prosecutorial authorities made a good-faith effort to obtain her presence at trial. Consequently, defendant was deprived of his Sixth and Fourteenth Amendment right to be confronted with the witnesses against him.

The judgment is reversed and the cause remanded for new trial.

All concur.