**UNITED STATES of America ex rel. William Cecil TRAVIS, Jr., Petitioner,**

v.

**William C. TRAVIS, William G. Travis, Algie Jesse Travis, Wylie W. Cunningham, Frankie Cunningham, George Blaine, and Alease Blaine, sureties for William Cecil Travis, Jr., and the Honorable Howard M. Jarrett, Judge of the Intermediate Court of Mercer County, West Virginia, Respondents.**

Civ. A. No. 1249.

United States District Court, S. D. West Virginia, Bluefield Division.

Nov. 9, 1970.

James B. McIntyre, Charleston, W. Va., for petitioner.

David W. Knight, Pros. Atty., Mercer County, Princeton, W. Va., Willard A. Sullivan, Asst. Atty. Gen. of W. Va., Charleston, W. Va., for respondents.

CHRISTIE, District Judge:

In this petition for a writ of habeas corpus ad subjiciendum, the petitioner alleges that he is being unlawfully and unjustly restrained of his liberty under color of authority of the State of West Virginia, in that he is in the custody of the respondents, sureties on a supersedeas bond executed by him before the Intermediate Court of Mercer County, West Virginia, following his conviction of a felony in that court.[1] The sureties appear to have taken the petitioner into custody pursuant to the provisions of

1. While the Honorable Howard M. Jarrett, Judge of the Intermediate Court of Mercer County, West Virginia, was named

a respondent in the petition, it is not clear from its allegations what relief, if any, is desired from him.

West Virginia Code, 62–1C–14, which places in a surety the power to take his principal into custody and surrender him to the court. It was developed at a hearing held on October 30, 1970, that, after filing the petition and before service of the show cause order, the petitioner was surrendered or transferred to the custody of either the Warden of the West Virginia Penitentiary or to the Warden of the West Virginia Medium Security Prison.[2]

The petition alleges that subsequent to his conviction, the petitioner applied to the Circuit Court of Mercer County, West Virginia, for a writ of error and supersedeas. Failing to get the writ there, he then applied to the Supreme Court of Appeals of West Virginia for like relief, which was refused by summary order.

An examination of the averments of the petition reveals that the grounds relied upon for federal intervention are (1) the failure of the state appellate court to delineate its reason, or reasons, for rejecting the appeal, and (2) the failure or refusal of the state appellate court to correct trial court error committed in the giving of, or refusing to give, certain instructions.

The respondents have moved to dismiss on the ground that the facts alleged fail to show petitioner's entitlement to the relief sought. In oral argument, respondents' counsel also raised the question of petitioner's failure to exhaust state remedies under 28 U.S.C.A. 2254, in that (a) he had failed to show that he had exhausted all remedies for direct appeal, since it appeared that he did not apply to the Supreme Court for certiorari after his appeal was rejected by the state's highest court, and (b) he had failed to seek habeas relief at the

state level. While a disposition of the case on either or both of these grounds might very well be warranted, this Court, under the circumstances,[3] prefers to rest its decision upon a more substantive basis.

■ As to the first ground assigned in this court for relief—failure of the appellate court to give its reason, or reasons, for rejecting the appeal—petitioner's counsel has not referred us to any constitutional or legislative provision or rule of court that required the Supreme Court of Appeals of West Virginia to write an opinion or give any reason for its rejection of applications for appeals or writs of error, and this Court's own research has failed to reveal any. It will be presumed that the reviewing court performed its legal responsibility and gave the case proper consideration. Scalf v. Bennett, 408 F.2d 325 (8th Cir. 1969). Therefore, the point is deemed to be frivolous and will be given no further consideration.

As to the second ground for relief—failure of the appellate court to rectify trial court errors—it is readily seen that the threshold question for this court to consider is whether the averment that certain instructions were erroneously given or refused presents a case properly cognizable for federal habeas relief under 28 U.S.C.A. 2241. That section provides, among other things, that the writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws of the United States. The petition does not point to any violation by the trial court of any specific federal law or constitutional provision; its averments relate only to alleged trial errors and the failure or refusal of the appellate court to correct them on appeal.

2. It now has been determined that petitioner is in the custody of the Warden of Huttonsville Correctional Center, Medium Security Prison, Huttonsville, West Virginia, and it is stipulated that he might be substituted as the sole respondent in lieu of the originally named respondents. The Clerk will amend the style of the case accordingly.

3. It is unrealistic to assume that the state appellate court would find reason to grant habeas relief where the grounds assigned are the same as those it had determined to be insufficient to warrant granting a writ of error on direct appeal.

■ Decisional law makes its clear that, unlike the appeal, writ of error or certiorari, the writ of habeas corpus does not exist to collaterally attack mere errors or irregularities which are not jurisdictional and which, at the most, render a judgment merely voidable; it can only be used to attack those judgments or proceedings which are void or where the procedure employed was so basically unfair as to deprive the accused of a constitutionally protected right under the Due Process Clause of the Fourteenth Amendment. U. S. v. Shoaf, 341 F.2d 832 (4th Cir. 1964); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Bridges v. Wixon, 326 U.S. 135, 149, 65 S.Ct. 1443, 89 L.Ed. 2103. Thus, federal courts will intervene in a state court proceeding only when a fundamental right of the prisoner has been denied and taken from him arbitrarily or a trial in accordance with the established procedural law of the state in a court of competent jurisdiction has not been afforded him. Odell v. Hudspeth, 189 F.2d 300, cert. denied, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (10th Cir. 1951). In Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942), the Supreme Court said that the federal writ extends only to those *exceptional* cases where the conviction has been in disregard of the constitutional rights of the accused and where the writ is the *only* effective means of preserving his rights.

Considering the instant petition in the context of these principles of constitutional law, it is readily seen that it fails to meet the required standard for federal intervention. Upon the face of the petition, it appears that the petitioner was charged, tried, convicted and sentenced in accordance with established law of the State of West Virginia and that all procedural safeguards necessary to meet the standard of federal due process at the trial level were afforded him. It also shows on its face that the petitioner was afforded a review of his conviction, first by the Circuit Court of Mercer County and then by the Supreme Court of Appeals of West Virginia, the court of last resort in that state. Under such circumstances, summary dismissal ordinarily would be in order, however, because of the sincerity evinced by petitioner's present counsel in oral argument and in order to avoid the possibility that a miscarriage of justice might go uncorrected, this Court agreed to review the trial transcript which includes the evidence, the instructions given and refused and the arguments of counsel to the jury.

■ The thrust of the argument of counsel for the petitioner was directed to the refusal of the trial court to give Defense Instruction No. 28, dealing with the principles applying to the use of circumstantial evidence, and the refusal of the appellate court to rectify the error on appeal. It was argued that the offered instruction was authorized by existing state decisional law and its refusal deprived the petitioner of the equal protection of the law. Allusion was also made to the refusal of Defense Instructions Nos. 9 and 14. Counsel for the respondents resisted the contention primarily on the ground that the state's case did not rest upon circumstantial evidence alone; rather it was made up of both direct and circumstantial evidence, and under such circumstances the giving of Defense Instruction No. 28 would have been improper, and that State's Instruction No. 7 on the subject, which the Court gave, was proper. That instruction reads:

"The Court instructs the jury that one charged with crime of conspiracy may be convicted upon circumstantial evidence alone, or upon circumstantial evidence connected with other evidence, if the jury believe beyond a reasonable doubt from the circumstantial evidence, or such circumstantial evidence connected with other evidence, that the person or persons so charged are guilty of the crime alleged against them in the indictment; therefore, the Court instructs the jury in this case that they have the right to convict the defendant upon circumstantial evidence alone, or upon cir-

cumstantial evidence coupled with other evidence, if the jury from such circumstantial evidence connected with other evidence, believe the guilt of the defendant beyond a reasonable doubt. And the Court further instructs the jury that circumstantial evidence is not only competent, but is sometimes the only mode of proof, and, therefore, if the jury believe from the evidence and circumstances in this case, beyond a reasonable doubt, that the accused committed the offense as charged against him in the indictment herein, then it is their duty to find him guilty."

The defense objected to the giving of this instruction on the sole ground that "it doesn't require the State to establish by circumstantial evidence the commission of the offense by the accused to the exclusion of every other reasonable hypothesis." However, if this was a valid objection at the time, it was taken care of by the giving of Defense Instruction No. 10, which reads as follows:

"The Court instructs the jury that William Cecil Travis, Jr., is presumed to be innocent until his guilt is established by evidence beyond all reasonable doubt. It is not sufficient that his guilt is probable, or even more probable than his innocence, nor can William Cecil Travis, Jr., be convicted upon mere suspicion. No amount of suspicion, however strong, will warrant his conviction. In order to convict the defendant, the evidence of guilt must be so strong as to *exclude every reasonable hypothesis consistent with his innocence.*" (Emphasis added)

To the same effect is Defense Instruction No. 17 in these words:

"The Court instructs the jury that it is your duty to consider the whole evidence in this case, and if you can *reconcile the evidence before you upon any reasonable theory consistent with the defendant's innocence,* you should do so and find the defendant not guilty." (Emphasis added)

We now pass to Defense Instructions Nos. 9, 14 and 28. No. 9 would have told the jury that circumstantial evidence should always be "scanned with caution" and that such evidence must be of such character and tendency as to produce a "moral conviction" of the guilt of the accused. This instruction was properly refused because its subject matter was covered in Defense Instruction No. 6, which defined the meaning of "reasonable doubt" and told the jury that before they could convict they must have an "abiding conviction, amounting to a moral certainty from the evidence in the case, that the accused * * * is guilty of the charge alleged in the indictment." No. 14 simply would have required a finding of guilt to a degree of moral certainty, rather than beyond a reasonable doubt. The instruction was properly refused. While the refusal of No. 28 is emphasized by petitioner's counsel in this proceeding, trial counsel appears not to have seriously pressed for it at trial. It reads:

"The Court instructs the jury that in order to warrant a conviction for a crime on evidence in whole or in part circumstantial, it is absolutely essential that all the circumstances from which a conclusion is to be drawn, and without which it could not be drawn, shall be established by full proof, and every circumstance essential to the conclusion must be proven in the same manner, and to the same extent (as) if the whole issue, that is the guilt or innocence of the defendant, had rested upon the proof of each individual and essential circumstance, and should to a moral certainty exclude every reasonable hypothesis consistent with the innocence of the accused."

The state's evidence was not solely circumstantial; there was direct evidence linking the petitioner to the crime charged. Nathaniel Johnson, a co-defendant and co-conspirator, testified for the state and implicated petitioner in the crime, and State Trooper Giles testified to certain damaging admissions petitioner made to him. Consequently, the

Court properly refused Defense Instruction No. 28, since there was both direct and circumstantial evidence before the jury and it dealt only with circumstantial evidence, and correctly gave State Instruction No. 7, which dealt with both direct and circumstantial evidence.

We have also reviewed all other instructions given or refused and have read the testimony of the witnesses and find (as apparently the state reviewing courts did) that the instructions given, some nineteen in number, adequately and correctly defined for the jury all the principles of law applicable to the evidence in the case, and that in sum the defendant had a fair trial. In making the review, this Court wishes to emphasize, however, that we are not setting a precedent to be followed in other cases where federal habeas relief is sought by state prisoners seeking relief for alleged trial errors, because, as we have previously pointed out, mere mistakes in the course of a trial are not to be corrected by habeas corpus and the office of the Great Writ is not to be distorted by an attempt to make the proceeding available as one in the nature of an appeal. This was made very clear by the Supreme Court in Eagles v. United States ex rel. Samuels, 329 U.S. 304, at p. 311, 67 S.Ct. 313, at p. 317, 91 L. Ed. 308, where it was said:

"It is elementary that habeas corpus may not be used as a writ of error. United States ex rel. Tisi v. Tod, 264 U.S. 131 [44 S.Ct. 260, 68 L.Ed. 590]; Woolsey v. Best, 299 U.S. 1 [57 S.Ct. 2, 81 L.Ed. 3]. The function of habeas corpus is exhausted when it is ascertained that the agency under whose order the petitioner is being held had jurisdiction to act. If the writ is to issue, mere error in the proceeding which resulted in the detention is not sufficient. [United States ex rel.] Tisi v. Tod, supra. Deprivation of petitioner of basic and fundamental procedural safeguards, an assertion of power to act beyond the authority granted the agency, and action without evidence to support its order, are familiar examples of the showing which is necessary. See Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]; Bridges v. Wixon, 326 U.S. 135, 149 [65 S.Ct. 1443, 1450, 89 L.Ed. 2103]. But it is not enough to show that the decision was wrong. [United States ex rel.] Tisi v. Tod, supra, or that incompetent evidence was admitted and considered. [United States ex rel.] Vajtauer v. Commissioner, 273 U.S. 103 [47 S.Ct. 302, 71 L.Ed. 560]. If it cannot be said that there were procedural irregularities of such a nature or magnitude as to render the hearing unfair, Bridges v. Wixon, supra, p. 156 [65 S.Ct., p. 1453], or that there was no evidence to support the order, Vajtauer v. Commissioner, supra, the inquiry is at an end."

More directly in point on the specific question before us, is the case of Williams v. Baker, 399 F.2d 681 (10th Cir. 1968), which holds that a ruling of the highest state court that a tendered instruction is an incorrect statement of state law is binding on the federal court, and that the refusal of the trial court to give the instruction could not be made the basis for federal habeas. In accord: DiPaolo v. Yeager, 399 F.2d 72, 74 (3rd Cir. 1968), cert. den. 395 U.S. 923, 89 S.Ct. 1778, 23 L.Ed.2d 240; Clark v. Peyton, 280 F.Supp. 205 (D.C.Va.1968).

The instant petition, in essence, simply would have this Court review the state court rulings because of mere trial errors, and while, for the reasons previously enunciated, we have done so, it was quite unorthodox. Faust v. North Carolina, 307 F.2d 869 (4th Cir. 1962); Harrison v. Boles, 307 F.2d 928 (4th Cir. 1962). The undesirability of such a procedure was forceably emphasized in Resolute Insurance Co. v. State of North Carolina, et al., 397 F.2d 586 (4th Cir. 1968), in this language:

"What (Resolute) now seeks to accomplish is to have a federal district court act in an essentially appellate capacity and review a state court deci-

sion alleged to be erroneous. The District Courts of the United States are not authorized and do not assume to exercise any such power. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Warriner v. Fink, 307 F.2d 933 (5th Cir. 1962), cert. denied, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963); Manufacturers Record Publishing Co. v. Lauer, 268 F.2d 187 (5th Cir.), cert. denied, 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184 (1959); Williams v. Tooke, 108 F.2d 758 (5 Cir.), cert. denied, 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419 (1940); Annot. 13 A.L.R. 2d 390, 467 (1950). Resolute will not be permitted to start all over again in the hope of working its way through the federal court system."

Finally, in this day of "judicial revolution," this Court is well aware of the constantly widening structure of federal habeas corpus as applied to state convictions, and the feelings of many, mistakenly, that it is a panacea for all grievances. This misconception caused Mr. Justice Frankfurter to remark in Rochin v. California, 342 U.S. 165, at p. 168, 72 S.Ct. 205, at p. 207, 96 L.Ed. 183 (1951), that

> "In our federal system the administration of criminal justice is predominately committed to the care of the States * * *
>
> " * * * (I)n reviewing a State criminal conviction under a claim of right guaranteed by the Due Process Clause of the Fourteenth Amendment, * * * 'we must be deeply mindful of the responsibilities of the States for the enforcement of criminal laws, and exercise with due humility our merely negative function to subjecting convictions from state courts to the very narrow scrutiny which the Due Process Clause of the Fourteenth Amendment authorizes.' Due process of law * * * is not to be turned into a destructive dogma against the States in the administration of their systems of criminal justice."

Though realizing full well that we have not in this instance followed to the letter Mr. Justice Frankfurter's wise admonition, we nevertheless subscribe to its philosophy.

The writ applied for will accordingly be dismissed.

