**STATE of Missouri,
Plaintiff-Respondent,**

**v.**

**David Lynn PUGH, Defendant-Appellant.**

**No. 10800.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 28, 1980.

Motion for Rehearing or Transfer
Denied May 15, 1980.

Application to Transfer Denied
July 15, 1980.

George D. Nichols, Lamar, for defendant-appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

By information filed, defendant was charged with first-degree murder as defined and denounced by former § 559.010, RSMo 1969, now repealed, and was also charged with robbery in the first degree and kidnapping as defined and denounced by former §§ 560.120 and 559.240, RSMo 1969, both now repealed. A jury acquitted defendant of murder but found him guilty of robbery and kidnapping. His punish-

ment was assessed at imprisonment for 35 years for robbery and 5 years for kidnapping. The trial court ordered that the sentences run concurrently. Defendant appeals.

A reasonably-minded jury could have found that defendant and two other men, John Martin and Leslie Sanders, were "riding around" in Martin's automobile in or near Carthage, Missouri, during the evening of November 21, 1974. Martin and Sanders decided to "hit" the Airport Package Liquor Store in Carthage. Defendant drove Martin and Sanders to the liquor store, let them out "beside the building" and parked the automobile at a nearby "car wash." Shortly thereafter, Martin and Sanders drove past the place where defendant was parked. They were driving a pickup; the owner of the liquor store was with them. Defendant followed the three men to a "country road" south of Carthage. Martin, Sanders and the owner of the liquor store "went off in [a] field," "quite a ways back off in the field." Defendant remained in the car, "sat on the road" and "heard [several] shots." Presently Martin and Sanders returned to the automobile defendant was driving. Martin told defendant "[we] shot him"; defendant's response was "Man, how come you shot so many times?" but Martin did not respond. Later, Martin told the defendant that the victim would be unable to "tell on us."

When Martin and Sanders returned to the car, defendant drove the automobile "on down the road" and the three men thereupon "went out to [Martin's] house" where a sum of money was divided. Defendant identified part of the money as money taken from the liquor store. Defendant and Martin took Sanders home, defendant went home and Martin went home. The State's evidence showed that the owner of the liquor store had been shot several times in the head and back and had been left lying beside his pickup.

On appeal, the defendant has briefed and argued ten assignments of error. This court is fully aware that this appeal is defendant's appeal of constitutional right,

*Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), and careful attention has been given to each assignment. We take Mo.Const. Art. 5, § 12, as implemented by Rule 30.25(a), V.A.M.R., to require the preparation of some order of written opinion when a criminal appeal is submitted. Nevertheless, our mandate must be reasonably interpreted so as to avoid unjustifiable encumbrance of the reported decisions of this state without making any contribution to the general body of the law. *Cichos v. State,* 246 Ind. 680, 210 N.E.2d 363, 364[1, 2] (1965), appeal dismissed 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). Seven of defendant's ten assignments are wholly without merit, and we do not interpret our constitutional mandate nor Rule 30.25(a) to require discussion of those points. See *United States ex rel. Travis v. Travis,* 319 F.Supp. 380, 381[1] (S.D.W.Va.1970); *People v. Parker,* 60 Mich.App. 368, 230 N.W.2d 437, 438[6] (1975). We have therefore focused our attention on three points raised by the defendant. They are: 1) that his Fifth and Sixth Amendment rights were infringed because his confession was wrongfully obtained and erroneously admitted in evidence; 2) that the State failed to make a submissible case, and 3) that his Sixth Amendment rights were infringed by admission of the preliminary hearing testimony of witness Jonathan Weeks. This third assignment of error was not preserved for review. It is tendered as a matter of plain error.

Violation of defendant's Fifth and Sixth Amendment rights is averred in the following terms: "The trial court erred in overruling defendant's motion to suppress defendant's written statement because his statement was obtained as a result of an illegally continued interrogation conducted after defendant had exercised his right to remain silent and consult with an attorney." The assignment is inaptly directed to the ruling on the motion to suppress, but defendant's objection was renewed and overruled when the statement was offered in evidence. The statement is actually a confession, and we will consider the assignment.

The specific question presented is whether defendant, having been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), effectively waived the right to remain silent and the right to counsel guaranteed by that case. Several basic principles must be borne in mind. There is no doubt that *Miranda* rights may be implicitly waived. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *State v. Phillips*, 563 S.W.2d 47, 52–54 (Mo. banc 1978); *State v. Alewine*, 474 S.W.2d 848, 851–852[2] (Mo.1971). In this case, evidence touching the voluntariness of defendant's confession was heard on several occasions; some evidence was heard at the preliminary hearing;[1] there was a perfunctory consideration of the voluntary nature of defendant's statement before a trial judge who was subsequently disqualified, and finally there was a full hearing on the motion to suppress before the trial commenced. There is, of course, no irregularity in hearing evidence on a motion to suppress on more than one occasion; a trial court's ruling on a motion to suppress is interlocutory and remains so up to the time the evidence is admitted. *State v. Howell*, 524 S.W.2d 11, 19[6] (Mo.banc 1975). Further, when a claim of implicit waiver of *Miranda* rights arises, the trial court functions as the trier of fact as it would in any other bench-tried matter. *State v. Alewine, supra*, 474 S.W.2d at 852–853[4]. We therefore conclude that we must consider all the evidence presented on the issue of implicit waiver to determine whether the State carried its burden to prove by a preponderance of the evidence that the confession was voluntary.

Here, the defendant was given separate *Miranda* warnings by two police officers. He was then taken to an interview room where two investigating officers were preparing to interrogate him. Before he was questioned, defendant was again advised of his rights. He read and signed a standard, printed waiver of *Miranda* rights which was supplied by the interrogating officers.

At the final, full hearing on the motion to suppress, the testimony of Lester York, one of the interrogating officers, was heard. York testified that the written waiver was explained to the defendant; defendant had no questions about the document and signed it voluntarily. Upon cross-examination, it was shown that defendant was asked by York if he wished to cooperate; defendant had said he did, but wanted to make a phone call first. It is not entirely clear, from York's testimony, whether defendant wanted to call an attorney or his family. However, counsel pursued the matter. For clarity, we restate the interrogation at that point:

"Q. Did you permit him to get on that telephone?

A. Yes, sir.

Q. The fact is, he wasn't able to get an answer?

A. I believe that is correct.

Q. Then you continued with the interrogation?

A. With his permission."

Counsel put the same question in several different ways, and received the same answer from York: defendant had asked to make a phone call; he was permitted to do so but obtained no response. Thereafter, with defendant's permission, the interrogation continued.

Officer Goodwin, another interrogating officer, testified that he recalled defendant's having asked to make a telephone call. Goodwin could not recall that defendant specifically requested an attorney during questioning. Goodwin's recollection was that *after* the interrogation, during booking, defendant had asked to be allowed to call "an attorney or his folks."

The defendant also complains that his statement was obtained by deception and subterfuge because, when he was taken in custody before he was interrogated, he was told he was being arrested for burglary. Defendant concedes that after he entered the interview room, he was advised the

---

1. The defendant was charged with murder; we assume the testimony at the preliminary hear-

ing was preserved pursuant to former Rule 23.12, V.A.M.R.

investigation would focus upon the offenses with which he was actually charged. The officers testified they had agreed in advance that when the defendant was arrested he would be told he was being investigated in connection with an unrelated burglary.

We conclude the point is without merit. The trial court could have found by a preponderance of the evidence that the defendant knowingly and voluntarily elected to proceed with the interrogation after he unsuccessfully attempted to telephone his attorney or his "folks." In such circumstances, his confession would be voluntary and admissible. *United States v. Marchildon*, 519 F.2d 337, 343[6] (8th Cir. 1975); *United States v. Scogin*, 459 F.2d 182, 184 (8th Cir. 1972), cert. denied 409 U.S. 865, 93 S.Ct. 159, 34 L.Ed.2d 114 (1972); see *State v. Phillips*, supra, 563 S.W.2d at 57 (Bardgett, J., dissenting). Further, the general rule is that confessions obtained through subterfuge are admissible unless the deception is such as to offend societal notions of fairness, or is likely to procure an untrustworthy confession. See *State v. Phillips*, supra, 563 S.W.2d at 58 (Bardgett, J., dissenting); *State v. Stubenrauch*, 503 S.W.2d 136, 138[3, 4] (Mo.App.1973); Annot., 99 A.L.R.2d 772, 786–787 (1965). The order of deception involved here was neither socially reprehensible nor likely to procure an untrustworthy admission. The evidence was sufficient to support the finding that defendant's confession was voluntary.

Defendant further contends that the State made no submissible case, because: there was no evidence that 1) property was taken from the victim 2) against his will by 3) violence to the victim's person or by putting the victim in fear of violence to his person. We agree that such were the elements of first-degree robbery as defined by former § 560.120, RSMo 1969. *State v. Wright*, 476 S.W.2d 581, 584[2] (Mo.1972). Defendant also maintains there was no substantial evidence that the victim was forcibly seized and asported from his premises, and we suppose such a showing was required to prove kidnapping as defined by former § 559.240, RSMo 1969. *State v. Johnson*, 549 S.W.2d 627, 631 (Mo.App. 1977).

In any criminal prosecution, the burden of proof is on the State to establish by evidence the guilt of the accused beyond a reasonable doubt. *State v. Howard*, 540 S.W.2d 86, 88[3] (Mo.banc 1976); *State v. Kimbrough*, 350 Mo. 609, 616, 166 S.W.2d 1077, 1081[4] (1943); *State v. Malone*, 327 Mo. 1217, 1228–1234, 39 S.W.2d 786, 790–793[6] (1931). Nevertheless, on appeal after conviction, the evidence is considered in the light most favorable to the prosecution, together with all inferences which might reasonably be drawn therefrom. *State v. Franco*, 544 S.W.2d 533, 534[1] (Mo.banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Stapleton*, 518 S.W.2d 292, 296[1] (Mo.banc 1975); *State v. Kays*, 492 S.W.2d 752, 758[1, 2] (Mo.1973).

The State had evidence from which it could reasonably be inferred that: There were a "whole day's" receipts in the cash drawer at the liquor store shortly after 9:00 p. m., November 21, 1974. The proprietor had some reason to anticipate an attempted robbery; there was a "sawed-off" shotgun under the counter and a Walther automatic pistol near the register. After midnight, the victim's wife was called to the liquor store. The store was empty, the victim and his truck were gone, the weapons, the money and several gallons of intoxicants were gone. The store was unlocked and unattended. The victim's wife testified that had never happened before. The victim was an able-bodied male, 48 years of age, in excellent health. The victim was found shot to death beside his abandoned pickup in a rural area some distance from the liquor store. It was shown that Martin and Sanders had been convicted of the victim's murder.

The defendant's confession, which we have held to be properly received, established that Martin came to the defendant's residence and expressed a desire to go to Sanders' residence. Defendant, Martin and Sanders "went riding around." Presently,

Martin suggested "hitting Airport Package." Defendant drove Martin and Sanders to a place near the Airport Package Liquor Store. A short time later, Martin, Sanders and the victim emerged, drove away in the victim's pickup, and defendant followed them. Martin and Sanders drove their victim "off in a field." Defendant remained nearby in the automobile he was driving. He "heard some shots." When Martin and Sanders returned, defendant drove them to Martin's house, where the money was divided. Defendant took Sanders home and then drove home. Martin, who is defendant's brother-in-law, then went home. From this evidence, any rational trier of fact could have found beyond a reasonable doubt that a robbery and kidnapping had been committed and that Martin and Sanders had committed both crimes. The State is not to be cast because other inferences were possible from the facts proved. *State v. Selle*, 367 S.W.2d 522, 528 (Mo.1963); *City of Kansas City v. Reeves*, 553 S.W.2d 548, 550[5] (Mo.App.1977). The defendant's confession established that he acted as "the wheel man." Evidence fairly showing any form of affirmative participation in a crime was sufficient to support a judgment of conviction as a principal when this case was tried. *State v. Cobb*, 444 S.W.2d 408, 412[2] (Mo.banc 1969); *State v. Schlagel*, 490 S.W.2d 81, 84[2] (Mo.1973). By any standard, the evidence was sufficient to support the judgment of conviction.

The final point for consideration is defendant's assertion that his Sixth Amendment rights were violated by admission of the preliminary hearing testimony of witness Jonathan Weeks. As noted, the defendant was charged with homicide, and we assume the testimony heard at his preliminary hearing was preserved as required by former Rule 23.12, V.A.M.R., which superseded § 544.370, RSMo 1969, V.A.M.S. There are a number of decisions holding that testimony taken before a magistrate may be used at the trial in a homicide case upon a showing that the witness is beyond the jurisdiction of the court, and those decisions specifically hold that the use of such testimony does not infringe the accused's

right of confrontation guaranteed by Mo. Const. Art. I, § 18(a). See, e. g., *State v. Harp*, 320 Mo. 1, 5–6, 6 S.W.2d 562, 563–564[2] (banc 1928); *State v. Lloyd*, 337 Mo. 990, 993–996, 87 S.W.2d 418, 420–422[3, 4] (1935). Of course, the State has been required to make some sort of showing that the witness is inaccessible, or having been located, is unwilling to attend, but the showing has been conditioned upon "the facts of the particular case." *State v. Lloyd, supra*, 337 Mo. at 996, 87 S.W.2d at 422[5]. Federal decisions run in much the same vein; the Sixth Amendment right of confrontation requires that the admission of preliminary hearing testimony be conditioned upon a good faith effort to obtain the witness's presence, if the State is to use it. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Nevertheless, the federal precedents have recognized that the right of confrontation is not absolute and ". . . may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973). Other jurisdictions have recognized that one of those interests is the need to minimize the time and expense of trial where the production of the witness would be unduly inconvenient and of little utility to the defendant. See, e. g., *State v. Olson*, 75 Wis.2d 575, 250 N.W.2d 12, 20 (1977).

■ In this case, prior to trial, the State advised the court and defense counsel of its intention to use Mr. Weeks' preliminary hearing testimony upon trial. The prosecutor stated that Weeks was in the armed forces and was stationed in California. The prosecutor offered defense counsel Weeks' telephone number so Weeks' presence outside the jurisdiction might be confirmed. Defendant contends this showing was insufficient. We tend to agree.

■ All Weeks' testimony showed, however, was that he entered the Airport Package Liquor Store about 11:30 p. m. on November 21. He found the store unattended, but "everything seemed to be intact."

Weeks left and returned 20 to 25 minutes later, found the store was still unattended and summoned police officers. Nothing in Weeks' testimony directly linked the defendant with the crimes committed; his testimony simply indicated the probable time the offenses were committed. There is nothing to indicate that Weeks' testimony was unreliable; it is highly improbable that cross-examination would have produced anything exculpatory. There was, we conclude, an abstract but nonprejudicial infringement of defendant's Sixth Amendment rights. We decline to hold the infringement was plain error requiring a new trial.

For the reasons indicated, the judgment is affirmed.

BILLINGS, P. J., and MAUS, J., concur.